William BROWN, Jr., Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

Sept. 8, 1967.

Carl Schnee, Asst. Public Defender, for appellant.

Jerome O. Herlihy, Deputy Atty. Gen., for appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice.

After a trial by jury, the appellant William Brown, Jr. was convicted of grand larceny of an automobile under T. 11 § 631. From the sentence imposed he has appealed. He alleges three errors in the charge to the jury: (1) refusal of the trial Judge to charge on the circumstantial evidence rule; (2) refusal to charge that a permissible verdict was guilty of operating a motor vehicle without the consent of the owner; (3) misleading language concerning the presumption arising from possession of recently stolen property.

Thomas A. Ciconte works in a barber shop in Wilmington Manor Shopping Center which is located on the southeasterly side of Route 40, a dual highway leading from Wilmington to Baltimore, Maryland. The center consists of a fairly long row of stores and shops with a sizeable parking area between the highway and the buildings. On August 16, 1966, Mr. Ciconte was not working, but had occasion to go to the shop about 2:25 P.M. He parked his car (a 1966 Chrysler) at the rear door and walked to his chair at the front of the shop. Upon glancing around, he noticed his car was moving backward. He hastened to the back door and saw the car move forward to the southerly end of the building, then turn right. It was being driven by a colored man wearing a very dark shirt. Mr. Ciconte immediately went to the front of the shop and saw the car pass over both lanes of Route 40, stopping on the far shoulder where there was standing a colored woman wearing a red dress. She entered the car and sat on the front seat. It then moved southwesterly. Mr. Ciconte went to the telephone and called the State Police station at State Road, which is also on Route 40 about 3½ miles southwest of the Center. Almost immediately after the call, Trooper Fleetwood left the station and drove southwesterly looking for the Chrysler. After proceeding a few miles at high speed, the trooper decided the car must be behind him. He pulled over to the opposite section of the road and started back. Very soon he saw the car proceeding southwesterly. It was being driven by a man who fitted the description given by Mr. Ciconte and who was the appellant. On the front seat was a colored woman wearing a red dress. A man was in the rear seat. The trooper turned to follow them and saw the car stop on the shoulder, whereupon the appellant and the woman got out and exchanged places. As they started to move on, the trooper stopped them and asked to see their driver's licenses. Neither she nor the appellant had such a license. The third person proved to be an Army man who was hitch-hiking to South Carolina. The trooper had previously noticed him standing beside the highway at its intersection with Route 13.

All these events occurred in a very short space of time. The trooper had received word of the call from Mr. Ciconte at 2:34 P. M. He stopped the car at 2:42 P.M. It was proven at the trial that appellant lived in Baltimore. The appellant did not take the stand nor did he present any evidence whatever.

I

Appellant contends that the conviction was based upon circumstantial evidence, at least as to the intent to appropriate the car to his own use, and that the Court should have explained to the jury the rule applicable to that kind of evidence. His argument assumes that this charge is required when-

ever any part of the State's case depends upon that type of proof.

■ The general rule is that a refusal to give such a charge is reversible only when the State's case is based entirely or very substantially upon circumstantial evidence. 53 Am.Jur. 570; 23A C. J. S. Criminal Law § 1250, P. 610. Particularly is this true where intent is the only element not proven by direct testimony. 23A C. J. S. Criminal Law § 1250, P. 620. Intent must usually be inferred from the acts done, but this fact does not necessarily require that the charge on circumstantial evidence be given.

■ Here the State's case was not based entirely or substantially upon circumstantial evidence. There was direct testimony of a taking and carrying away. The evidence of identity of the taker was very strong, especially in view of the extremely short interval between the taking and the apprehension. The wrongful taking with no apparent purpose of returning the property is, in the absence of explanatory circumstances, evidence of an intent to permanently deprive the owner of his property. State v. Von Buren, 7 Boyce 79, 102 A. 981; 32 Am.Jur. 1048. There was nothing in the proofs in the present case to suggest any intent to return the car to its owner. The finding of larcenous intent was clearly justified. Under the evidence, there was no prejudicial error in refusing the prayer.

## II

T. 21 Del.C. § 6702 makes it a misdemeanor to drive a motor vehicle without the owner's consent, with intent temporarily to deprive the owner of his possession thereof. T. 11 Del.C. § 3709 permits the jury, upon a charge of larceny of a motor vehicle, to acquit of the larceny and find a verdict of guilty of violating T. 21 Del.C. § 6702, "if the evidence warrants such a finding".

It is appellant's contention that he was entitled under the statute to have the jury consider this alternative verdict and that the trial Judge erred in denying his prayer to so charge. This argument, in our opinion, is not justified by reason or precedent.

■■ At common law, there could never be a conviction of a misdemeanor under an indictment for a felony, nor could an indictment include in separate counts a felony and a misdemeanor. State v. Fitzsimon, 18 R.I. 236, 27 A. 446. In some States, even without statutes, that principle has been held inapplicable because the reasons for its existence have no application in this country today; in other states, statutes have been passed to bring about that result. Delaware has adopted several statutes so providing; they make up the greater part of T. 11 Del. C.Ch. 37. For example, § 3702 permits a verdict of guilty of petty larceny (a misdemeanor) upon an indictment for grand larceny (a felony) if warranted by the evidence, the only distinction between the two crimes being in the value of the property taken. With a single exception, every section of Chapter 37 contains the qualifying language "if the evidence warrants such a finding".* The reason for the existence of these sections does not suggest a legislative intent to permit a finding of the misdemeanor where there is no evidence to justify it; their purpose is to permit the lesser verdict when it is justified.

■ Appellant suggests that the words "if the evidence so warrants" are inserted for the guidance of the jury only, and do not permit the Court to remove the possibility of the lesser verdict by declining to charge upon it. Surely, even in a criminal case, a Court is not obliged to permit the jury to re-

---

* The exception is § 3701 which permits a finding of manslaughter, a felony, under murder indictments. Even in such case, however, it has been held appropriate to instruct the jury that there was no evidence and no issue of manslaughter, if such be the fact. Bantum v. State, 7 Terry 487, 85 A.2d 741.

turn guilty verdicts which are entirely un-supported by any testimony and which could be based only upon pure speculation. If appellant were correct, he would have been entitled in this instance to a charge allowing a verdict of petty larceny, which would mean that the property is worth less than $100, despite the fact that the only testimony showed it to be worth more than $3000.

The authorities seem to be almost unanimous in disagreeing with appellant's argument. See 23A C. J. S. Criminal Law § 1288, p. 698; 53 Am.Jur. 591; 5 Wharton's Criminal Law and Procedure (Anderson) § 2099; Underhill on Crim.Ev. (5th Ed.) § 19. The cases cited in appellant's behalf are certain Delaware decisions dealing with murder indictments; they have no bearing here because they involve statutes which do not contain the quoted language; moreover, the murder-manslaughter statutes were adopted for reasons having nothing to do with the common-law rule against conviction of a misdemeanor under a felony indictment.

■ The question is, then, whether the evidence in the present case would have warranted a verdict of guilty of the lesser charge. The different between larceny of the car and driving it without the owner's consent lies only in the intent with which it is taken. Appellant contends that, since there was no direct evidence on the point, the jury could reasonably have inferred an intent to return the car, had it been allowed to do so. As we have said, there is nothing in the evidence suggesting a purpose to return the car and a finding to that effect would be based upon pure speculation. The appellant, an unlicensed driver, was a stranger to the owner; he took the car from the rear of the barber shop and almost immediately picked up a passenger who was obviously waiting for him; he later picked up a hitch hiker who was on the way to South Carolina; he drove towards Baltimore where he lives and which is, of course, outside this State.

We find no error in the refusal to charge on this statute.

III

■ Appellant's final objection is directed to the following language in the charge:

"There is a presumption in law that the possessor of stolen goods is the thief. That possession may be explained to the satisfaction of the jury and if one who is in possession of stolen goods explains either circumstantially or directly that possession, then the presumption is destroyed and would no longer exist".

That paragraph was immediately followed by a statement that defendant was not required to testify and that his failure to do so could not be construed as an indication of guilt or innocence. Appellant complains that the charge could be construed as meaning that a defendant must testify in his own behalf and that a conviction is mandatory in the absence of a satisfactory explanation of possession.

It will be noticed that the paragraph concerning the presumption arising from possession deals only with the question of identity of the taker. Because of the peculiar facts of this case, the State hardly needed the benefit of any rule of presumption to prove the taker's identity. Even if its language is not exactly precise, any imperfection in it is of minor importance and, in our opinion, does not justify a reversal.

We do not consider that the quoted paragraph suggests that a defendant must testify in his own behalf. What it says is that a defendant may present explanatory evidence when the State has shown his possession of recently stolen property. It does not suggest that the jury can draw an unfavorable inference from his failure to testify; it says that proof of the possession is sufficient to show identity of the taker unless explanatory evidence is in the record. It may be, in a given case, that the defendant is the only person who can give an explanation in which event he is placed in the position of deciding whether to take the stand or risk

an unfavorable verdict; that decision is one which defendants must frequently make.

Nor does the charge on this point, in our opinion, indicate that a conviction is mandatory in the absence of explanatory evidence. We agree that the charge is something less than exemplary in this respect, and that the better practice by far would be to charge the jury along the lines mentioned in Flamer v. State, Del., 227 A.2d 123, 126 footnote 1. However, we cannot believe that the quoted paragraph was so misleading to the jury as to cause injustice or prejudice to this defendant, when it is considered in the light of all the evidence and the remainder of the charge.

For the reasons stated, the judgment below will be affirmed.