Pearce JOHNSON, Jr., Defendant Below, Appellant,

v.

The STATE of Delaware, Plaintiff Below, Appellee.

Supreme Court of Delaware.

Sept. 26, 1968.

Morton Richard Kimmel, Wilmington, for defendant below, appellant.

Robert E. Daley, Deputy Atty. Gen., for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

Pearce Johnson, Jr., the appellant, was convicted in the Superior Court of the crime of robbery. He has appealed from the sentence therefor as well as the Court's refusal to grant a new trial. He contends that the Court erred (1) in admitting certain photographs into evidence, (2) in refusing to charge the jury that a verdict of guilty of assault was permissible, and (3) in refusing to grant a new trial. We discuss those points in that same order.

I

The victim of the robbery was Robert Baxter. According to his testimony, on April 29, 1967, he was near Sixth and Jefferson Streets in Wilmington about 5:30 p. m. looking for a man named Keys, who had a car key belonging to Baxter. He approached a group of three men, one of whom was the appellant, and asked if any of them knew where Keys lived. The

appellant stated that he was Keys' brother and that Keys was "over at the house." At appellant's suggestion, the victim accompanied him across the street into a house. They went into a room in which were sitting two men and two women. The appellant then demanded money from Baxter and, when the latter refused, struck him several times. He then forcibly took Baxter's watch and money. The victim's version of the robbery was verified by Sandra Coleman, one of the women who was in the room at the time. The defense was an alibi.

During the trial, the victim on direct examination positively identified the appellant as the person who committed the robbery. On cross-examination, he testified that he had seen appellant at the preliminary hearing in Municipal Court a few days after the crime. Defense counsel then asked if he had seen any photographs of the defendant previous to the hearing. Baxter answered that the police had, on the day before the hearing, shown him five or six "mug shots", one of which was of the appellant. He further stated that Johnson's picture was the only one of a Negro of light complexion, the others depicting Negros of dark complexion. A police officer later testified that he had shown to the victim six pictures, from which Mr. Baxter had identified that of the appellant as well as those of the other two men present during the robbery. Over objection, the six photographs were admitted into evidence after certain police markings on them had been clipped off or covered with masking tape.

The appellant here argues that, since the pictures show both front and side views of the faces, the jury must have known that they were police photographs and may have inferred therefrom that appellant had previously committed some crime; that the pictures served no useful purpose in this case; and that their admission was harmful to the appellant in that, since there was no other evidence of any prior conviction, this was an indirect way of proving something which is inadmissible.

■ Evidence of prior unrelated criminal acts is ordinarily inadmissible at a trial, except that the State may show that a defendant has been convicted of a felony, if such be the case. There are cases in which police photographs, or references thereto, have been ruled objectionable as tending to circumvent this rule. United States v. Reed, 7 Cir., 376 F.2d 226; Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509; Commonwealth v. Trowery, 211 Pa. Super. 171, 235 A.2d 171; State v. Boyd, 8 Terry 370, 91 A.2d 471. On the other hand, as is demonstrated in State v. Stevens, 69 Wash.2d 906, 421 P.2d 360, there are instances when their introduction is proper. The *Stevens* case involved a situation similar to the one now before us, i. e., testimony of the existence of a "mug shot" of the defendant was elicited during cross-examination of the complaining witness, and the picture was later introduced to clarify confusion in the testimony of the witness with respect thereto.

■ We are accordingly not fully convinced that the pictures were inadmissible in the present case. The witness Baxter described them, on cross-examination, as "mug shots", and it would therefore appear that any possible harm occurred at that time; yet there was neither an objection nor a motion that the answer be stricken. Instead, further questions were asked concerning them. At the completion of the cross-examination, the jury was, or could have been, left with the impression that the pictures included only one of a man of light complexion, and thereby induced Mr. Baxter to make an incorrect identification. The prosecuting attorney obviously offered the pictures themselves to refute any suggestion of this kind, since the photographs in fact depict men of various complexions, and there is one of a light-complexioned man aside from the defendant.

It is, of course, not necessarily true that the jury would have drawn the inference suggested by the appellant. There was no evidence to show when appellant's photograph had been taken; he was apparently

taken into custody a few days before the Municipal Court hearing, and the pictures could have been taken following this arrest.

In any event, assuming that the pictures were inadmissible, we cannot hold that their admission constituted reversible error in this case. See Freeman v. State, Del., 242 A.2d 311. The evidence against the appellant was strong, and that in his favor was weak. The victim was with him ten or fifteen minutes at the time of the robbery and was positive in his identification. The witness Coleman was equally positive; she had known him several years and was not shown to have any bias against him. His alibi was supported at the trial only by his aunt. His testimony was that he had gone to his aunt's house earlier in the afternoon and had been absent from the house only long enough to go to a store and purchase a bottle of liquor. He also stated that his uncle drove him in a car on that errand. His aunt was called to support his story but under her version the jury could have found that he was absent from her home a sufficient length of time to have committed the crime. The robbery took place sometime between 5:30 p. m. and 6:00 p. m.; according to Johnson's aunt, appellant left her home about 5:30 p. m. and may not have returned until 6:30 p. m. It is of some significance that, for reasons not called to our attention, appellant's uncle—the one person who allegedly was with him during the interim—was not called to the stand.

## II

The second question raised is whether the Court correctly denied appellant's prayer to charge the jury that a verdict of guilty of assault was permissible. This prayer was based upon Title 11 Del.C. § 3707, which provides:

"Upon the trial of any person for any felony whatever, where the crime charged includes an assault against the person, the jury may acquit of the felony and find a verdict of guilty of assault against the accused, if the evidence warrants such finding. * * * Nothing in this section shall be construed so as to apply to capital cases."

Under the evidence, the assault was part of the robbery; whoever assaulted Baxter also robbed him. In short, there was no evidence to warrant a verdict of assault only, and accordingly there was no reason to submit the prayer to the jury. Brown v. State, Del., 233 A.2d 445.

## III

Several months after his conviction, the appellant applied for a new trial. To support his application, testimony was presented to the trial Judge by appellant's girl friend, Deborah Canty, who was alleged to be the other woman in the room at the time of the robbery. Miss Canty denied that she was present, and stated that she accompanied the appellant to his aunt's home early in the afternoon of April 29 and remained there until late that night. She also said that he had remained there except for the one occasion when he had gone to the liquor store. She explained her absence from the trial by the statement that she had been, previously thereto, forcibly taken to Baltimore by a man who kept her there as his prisoner until shortly before the date of the hearing on the new trial motion—a period of about five months. It is understandable that the trial Judge did not believe what she said. Moreover, as the Judge pointed out, her testimony, if true, was purely collateral to the extent that she denied being at the crime scene, and was merely cumulative to the extent that she verified the alibi. The Judge concluded that a new trial was not likely to result in a different verdict. We find no reason to hold that there was an abuse of discretion in the denial of the motion. The unreported case of State v. Patrick, a decision of the Superior Court, involved an extremely unusual situation not comparable to the present case; it affords no authoritative reason for a reversal here.

The judgment below will be affirmed.