Charles R. DERRICKSON, Defendant Below,
Appellant,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

June 14, 1974.

Richard Allen Paul and Paul M. Lukoff, Asst. Public Defenders, Wilmington, for defendant below, appellant.

Jerome O. Herlihy, Chief Deputy Atty. Gen., and Joseph A. Hurley, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY, J., and BROWN, Vice Chancellor.

DUFFY, Justice:

In this appeal from a conviction for first-degree murder defendant raises five questions which we consider *seriatim*.

I

After six prosecution witnesses had testified and at the beginning of the third day of trial, the State moved for sequestration of all witnesses. Over defendant's objec-

tion, the Court granted the request and we now have several arguments based on that ruling.

## A.

First, defendant argues that it was improper to sequester after the trial had started and witnesses had testified.

This precise issue has never been decided by a Delaware appellate court but a Superior Court decision in a civil case is pertinent. In Pritchard v. Henderson, Del.Super., 50 A. 217 (1901), after three witnesses had testified, counsel for defendant asked that all witnesses not examined be excluded from the courtroom. The Court denied the motion, saying:

"The uniform practice has been that if you wish to exclude the witnesses, it must be done at the commencement of the case. Your witnesses have heard all the testimony thus far adduced. I have never known a case where the application has not been refused when made after the opening of the case and after testimony has been received."

We decline to approve this rule because, in our view, such an inflexible approval is likely to do more harm than good.

The modern and better rule as to sequestration is that which we announced last year in Grace v. State, Del.Supr., 314 A.2d 169 (1973). And see 53 Am.Jur., Trial § 31. Generally speaking, sequestration is a matter within the discretion of the trial judge. Establishing a fixed rule would necessarily limit the exercise of discretion and that we decline to do. In short, we will not approve Pritchard.[1]

It has been said that sequestration "need not be demanded at the very opening of the testimony, at any time later, when the supposed exigency arises, the order may be requested," 6 Wigmore on Evidence § 1840

(3 ed.), and we believe this to be a sound approach. In the interests of fairness and impartiality the preferred time to request exclusion of all witnesses is, of course, before any witness has testified, but the benefit of sequestration (as an aid in detecting inconsistencies and fabrications) is too great to automatically deny exclusion simply because the request is made after commencement of trial. See Bumblauskas v. South Suburban Safeway Lines, 110 Ill. App.2d 52, 249 N.E.2d 143 (1969).

We hold that a motion to sequester, whenever made, is addressed to the sound judicial discretion of the trial judge. Therefore, it was not error per se for the Court below to order sequestration after some witnesses had been examined.

## B.

The next question we must decide is whether the Trial Judge abused his discretion in ruling as he did.

After the motion to exclude was made, the Court heard both sides on the issue.

From the record, it is apparent that he carefully assessed the situation and concluded that of the witnesses who had already been heard, none had testified to anything relevant to the testimony of the others nor could their testimony have provided any basis for that of others.

Although discretionary, sequestration should ordinarily be granted upon request in criminal cases unless sound reasons exist for refusal or exception. Grace v. State, supra. Since our analysis, like that of the Trial Judge, reveals no exceptional circumstances, we hold that he did not abuse his discretion in ordering what amounted to a partial sequestration.

## C.

Danny Davis, a principal witness for the State, admitted on cross-examination that

---

[1]. Citing Pritchard, 88 C.J.S. Trial § 66 states that the request for sequestration "comes too late if made after testimony is received."

he had been present in the courtroom when a doctor testified that alcohol was not found in the body of the victim, Wayne McNeal. Defendant says that the only doctor who so testified was Dr. Leonard Bednarczyk, the State Toxicologist, who was heard after sequestration was ordered. Defendant says that Davis violated the sequestration order.

The gravamen of the argument seems to be that the remedy for such violation should be exclusion of testimony given by the offending witness and, because this violation was not discovered until after the witness had testified on direct, the Court should reverse the conviction.

■■ The general rule is that violation of a sequestration order does not automatically result in disqualification of that witness, and the Court cannot exclude testimony on that ground alone. 14 A.L.R.3d 16 § 5[a]; 88 C.J.S. Trial § 70; 2 Wharton's Criminal Evidence § 405 (13 ed.). Moreover, in the absence of a showing that the rule was violated through consent, connivance or procurement of the party calling the witness (or counsel representing such party), the witness is not rendered incompetent and the party calling him cannot rightfully be deprived of that witness's testimony; 14 A.L.R.3d 16 § 6[a]; 88 C.J.S. Trial § 70. The requisite showing has not been made here.

■ And it has been expressly stated in a number of cases that admission of testimony by a witness who violated a sequestration order is not reversible error, absent a showing of prejudice. 14 A.L.R.3d 16 § 22; Wharton's Criminal Evidence, supra. In this respect, it is significant that Dr. Bednarczyk testified that he found *no* alcohol in the blood sample of the victim, while Davis testified that defendant had told him that he (defendant) and the victim had been drinking prior to the homicide. Important, too, is this: approximately one

and one-half years prior to trial, Davis testified in a related (bail) hearing similarly to the way he did at trial, including the fact that defendant had told him that the victim had been drinking the night of his death. Thus, defendant has failed to establish that Davis was in any way contaminated by hearing Dr. Bednarczyk's testimony or that he shaped his story to conform to that of the Doctor.

In the absence of a showing of prejudice, we will not disturb the conviction on this ground.

### D.

Finally, defendant asks us to assume that since Davis admitted being present during Dr. Bednarczyk's testimony, he was also present during examination of six other witnesses who testified on the same day. Defendant concedes in his brief, however, that this is not supported by the record.

■ The short answer to this is that we will not engage in the speculation on which the argument is based.

### II

We turn now to the second question raised by the appeal. Defendant argues that it was reversible error for the Court to admit into evidence a partially-filled box of .25 caliber Remington-Peters brand bullets found in a search of defendant's residence. Two points are made.

### A.

First, defendant says that failure to file a return of the search warrant until approximately nine months after the search was made prohibits use of the evidence seized.[2]

■ This question is controlled by our recent decision in Edwards v. State, Del.

---

2. Defendant makes no argument that the warrant or the search conducted pursuant thereto was defective or in any way invalid.

Supr., 320 A.2d 701 (1974). In that case we stated that "a ministerial act subsequent to execution of a validly issued search warrant (such as failing to properly list an item on the return) will not nullify the prior and legal act of searching and seizing." See also Orfield, Criminal Procedure Under Federal Rules § 41.58; Wright, Federal Practice and Procedure: Criminal § 672, n. 6 (Supp.). And of a situation where items were not listed on the return *at all*, the United States Supreme Court has recently said: "As these items were constitutionally seized, we do not deem it constitutionally significant that they were not listed in the return of the [search] warrant." Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). *A fortiori,* properly listing the item but merely filing the return late will not invalidate an otherwise legal search and seizure.

 We also note that defendant suffered no prejudice from the late filing. As the Judge presiding at the suppression hearing pointed out in his opinion denying the motion to suppress, the seized items were physically returned in open court on the day of the arrest and search. (Apparently, defendant was present when this was done.) Accordingly, the admission of the bullets was not improper based upon this contention.

### B.

Second, defendant says that the box of ammunition lacked evidentiary value. To support this argument, three reasons are offered: (1) There was no proof that anybody had been killed with a .25 caliber bullet; (2) there was evidence that there are millions of Remington-Peters .25 caliber bullets in this Country; (3) it is not unlawful to own and possess .25 caliber bullets.

We find none of these reasons convincing. The record shows that a projectile was recovered from the remains of the victim after an X-ray had been taken during the initial autopsy. A ballistics expert determined that the projectile was a spent Remington-Peters brand .25 caliber bullet. By piecing together some of the fragments of skull bone a physician, who testified as an expert witness, concluded that there was a bullet entry hole in the right rear skull area of the victim. Further testimony indicated that the hole was consistent with that made by a .25 caliber bullet. The cause of death of the victim was determined to be a bullet hole in the back of the head which injured the brain, complicated by severe burning of the body. A search of defendant's residence uncovered the partially-filled box of Remington-Peters .25 caliber bullets.

 We think it clear that these facts sufficiently establish the probative value of the box of ammunition. Defendant's arguments go to the weight thereof, not its admissibility. The bullets were properly admitted, there was no error.

### III

Defendant's third contention is that the Trial Court mistakenly refused to instruct the jury as to second-degree murder or manslaughter. It is claimed that, "The fact of death is entirely compatible with manslaughter, for example, a killing in the heat of passion or as a result of a violent altercation or argument." This adds nothing to further our inquiry.

 Aside from defendant's confession related through the testimony of Danny Davis, the evidence of guilt was substantially circumstantial. Indeed, there was no eyewitness testimony. In such a case it could be said that death was compatible with any number of possible theories. But compatibility with a given theory is not the standard for determining whether a certain instruction should be given. The test is whether there is evidence to support a jury finding under the particular instruction sought. And the number of Delaware cas-

es so holding is legion: e. g., Dobrosielski v. State, Del.Supr., 311 A.2d 875 (1973); Hallowell v. State, Del.Supr., 298 A.2d 330 (1972); Johnson v. State, Del.Supr., 247 A.2d 211 (1968); Smith v. State, Del. Supr., 243 A.2d 719 (1968); Brown v. State, Del.Supr., 233 A.2d 445 (1967); Thompson v. State, Del.Supr., 4 Storey 27, 174 A.2d 141 (1961); Smith v. State, Del. Supr., 11 Terry 170, 126 A.2d 142 (1956); Bantum v. State, Del.Supr., 7 Terry 487, 85 A.2d 741 (1952); State v. Carey, Del. Ct.O. & T., 6 W.W.Harr. 521, 178 A. 877 (1935).

Stated otherwise, the Court may not permit the jury to speculate upon a verdict unsupported by evidence. Dobrosielski v. State, supra; Smith v. State, Del.Supr., 243 A.2d 719 (1968). And in homicide cases the rule is no different: the charge must be adapted to the facts. Bantum v. State, supra.

We are satisfied from our review of the facts that only two verdicts were permissible: guilty of murder in the first degree or not guilty of any crime. Therefore, we conclude that the Trial Judge made no mistake in refusing the requested instruction.

## IV

The fourth ground for appeal is that the testimony of Davis was improperly received into evidence. Arguing that since such testimony related a confession, defendant says that independent proof of the corpus delicti was required and this the State failed to produce.

The applicable rule is that of Nelson v. State, Del.Supr., 11 Terry 96, 123 A.2d 859 (1956), where it was stated that a confession alone is insufficient to prove corpus delicti. Citing 7 Wigmore on Evidence § 2072 (3 ed.), this Court wrote that "proof of the corpus delicti requires (1) proof of injury, death, or loss, according to the nature of the crime, and (2) proof of criminal means as the cause."

Here, apart from the confession related through Davis, the evidence of corpus delicti can be summarized this way:

A cabin located in Kent County, north of Farmington and south of Harrington, burned on or about December 12, 1970. A passerby stopped, went in and found what appeared to be human remains. The police were notified and with the assistance of an official from the State Fire Marshal's Office, an on-the-spot investigation was conducted. Recovered from the ashes were various items including a projectile. In the opinion of a Deputy State Fire Marshal, the fire was of incendiary origin, that is, not due to natural or accidental causes. He concluded that the fire was set by human hands, and that some kind of accelerant was poured on or around the body before the fire was started. The Fire Marshal's report listed the incident as first-degree arson. The Assistant State Medical Examiner who performed an autopsy on the remains concluded that the victim was alive when the fire started but died very soon thereafter. The State Medical Examiner, who examined the remains, determined that death was primarily caused by a bullet hole in the back of the head, further complicated by burning of the body. It was his opinion that the case was one of homicide.

Clearly the evidence established that a death occurred by criminal means. Thus there was evidence of corpus delicti independent of, and corroborating, the confession, so that when all the evidence was taken together, corpus delicti was proved beyond a reasonable doubt.[3] Nelson v. State, supra.

---

3. Davis testified that defendant said he had shot McNeal in the back of the head, poured brake fluid on him and set him on fire. Other evidence introduced by the State as to age, sex, size clothing, a wrist watch and belt buckle circumstantially tend to show that McNeal was, in fact, the deceased found in the burned cabin. The State also introduced evidence as to motive.

There was no reversible error on this ground.

## V

Finally, defendant contends that admission of testimony of Frank Leister was error. At trial, it was shown that the victim, Wayne McNeal, had been employed by Leister at a gasoline service station in Maryland for several months prior to his death. The State offered Leister's testimony to show a conversation he had with the victim sometime shortly before he last saw him. The deceased had apparently asked Leister for time off from work so that he, McNeal, could go to Delaware with defendant to change the registration tags on a car.

The testimony was offered to show a statement of present intention or an existing state of mind of the deceased, a universally recognized exception to the hearsay rule. The basis for admitting such testimony is found in State v. Long, Del. Ct.O. & T., 2 W.W.Harr. 380, 123 A. 350 (1923), which announced five requirements as the necessary foundation:

(1) The statement must be relevant and material;

(2) It must relate an existing state of mind when made;

(3) It must be made in a natural manner;

(4) It must be made under circumstances dispelling suspicion;

(5) It must contain no suggestion of sinister motives.

We approve these requirements.

The Court below, after an extensive *voir dire* examination of Leister, found that these criteria were met, and admitted the testimony. Arguing that the statement was made under circumstances of suspicion and that it contained a suggestion of sinister motives, defendant now asserts that this was error. Our analysis of the record persuades us that the testimony was properly admitted.

Leister testified that the conversation with McNeal was one that he might ordinarily have with an employee, although he noted that, "It was kind of crazy the way he [McNeal] explained it," because "The car was titled in Pennsylvania; he had Maryland tags, and he wanted to put Delaware tags on it, or something like that." Moreover, when asked whether he was suspicious of McNeal's statement, Leister responded: "I wasn't suspicious of him really wanting to go do this after he explained it. I was suspicious of the fashion he was going to do it." Other than this, Leister characterized the exchange as "normal."

We think defendant misconstrues the standards set forth in *Long*. The requirement that the statement be made under circumstances absent suspicion refers to the circumstances surrounding the declaration itself, not the contemplated action related in the declaration. See 6 Wigmore, supra, § 1725 (3 ed.). So, although Leister may have been suspicious of what McNeal intended to do, he had no doubt that McNeal intended to do it. And that rationale likewise applies to the requirement that the statement contain no suggestion of sinister motives. Again the focus is upon the motive for making the statement, not the nature of the planned activity. While the proposed activity may be sinister, the statement of intention to do it need not be so. And that is the situation in this case. The conversation between Leister and McNeal was natural; in the normal course of things it is not unusual for an employee who wishes time off from work to ask his employer and state his reasons therefor.

We conclude the testimony was competent to show the present purpose or inten-

tion of the deceased when the statement was made. It was therefore properly admitted.

\* \* \*

The judgment of the Superior Court is affirmed.[4]

---

4. Defendant filed, independent of his counsel, a "supplemental brief" in which he argues that he was denied his constitutional right to a speedy trial. We decline to rule on that contention. Defendant is represented by able and experienced attorneys who know how to properly raise a speedy trial issue.