Charles R. DERRICKSON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted March 26, 1979.

Decided Aug. 16, 1979.

L. Vincent Ramunno, Wilmington, for defendant-appellant.

Kenneth R. Abraham, Deputy Atty. Gen., Dover, for plaintiff-appellee.

Before HERRMANN, C. J., DUFFY, J., and HARTNETT, Vice Chancellor.

DUFFY, Justice:

This is an appeal from an order of the Superior Court denying defendant's motion under Criminal Rule 35 for postconviction relief. We had remanded the case for a more comprehensive consideration of the issues raised in that motion. *Derrickson v. State*, Del.Supr., 399 A.2d 202 (1979). The Superior Court has made additional findings and rulings, and counsel have had an opportunity to brief them in this Court.

## I

Before considering the merits of the appeal, we must first outline the procedural route defendant has traveled thus far.

Charles R. Derrickson (defendant) was charged with killing one Wayne McNeal. The remains of a person the State contends was McNeal were found in an abandoned cabin which had been destroyed by fire, and Derrickson was linked to the death by a confession testified to by his nephew, one Danny Davis. Other evidence established that McNeal's death was a homicide, by criminal means.

Defendant was convicted of first-degree murder by a Superior Court jury and, on appeal, this Court affirmed. *Derrickson v. State*, Del.Supr., 321 A.2d 497 (1974). Thereafter, defendant filed in the United States District Court for the District of Delaware a *pro se* petition for a writ of habeas corpus, raising the same issues which had been presented to this Court. The petition was dismissed by the District Court, with leave to amend to include a new issue. *Derrickson v. Anderson*, D.Del., Civ. A. No. 74–149 (Slip Opinion, August 29, 1974). With the aid of counsel, defendant then resubmitted the petition, making the same allegations and adding new ones. The District Court dismissed the petition to the

extent that it was based on complaints submitted previously and denied relief on the new grounds because Derrickson had not exhausted his State remedies. *Derrickson v. Vaughn*, D.Del., Civ. A. No. 77–441 (Slip Opinion, December 27, 1977).

After the dismissal, Derrickson filed the Rule 35 motion in Superior Court, alleging most of the new grounds raised in the District Court. Without holding a hearing, the Superior Court denied the motion. *Derrickson v. State*, Del.Super., Cr.A. No. 221, 1971 (1978). Defendant then appealed and we remanded, specifically directing the Court to determine which issues are governed by prior rulings of the respective Courts and which are new issues. As to the latter, we directed the Court to hold a hearing, if one were necessary, and to make the required rulings, stating the reasons therefor. The appeal is now ready for decision on the merits.

## II

Defendant's Rule 35 motion raises nine issues, which we discuss sequentially.

### A.

First, Derrickson contends that the State failed to produce sufficient evidence to support a conviction for first-degree murder. As the Superior Court has stated, this issue was reviewed in defendant's direct appeal, and his argument to the contrary is without merit. We say this because of the ruling made in our earlier opinion; thus:

"We are satisfied from our review of the facts that only two verdicts were permissible: guilty of murder in the first degree or not guilty of any crime."

321 *A.2d* at 502.

Although the precise issue then submitted was a failure of the Trial Judge to instruct on second-degree murder or manslaughter, implicitly the Court considered whether there was sufficient evidence to support the first-degree murder verdict. Indeed, we said that two verdicts were permissible one of which was murder in the

first degree. Accordingly, defendant's first contention does not state a basis for Rule 35 relief.

### B.

■ Next, defendant argues that he was denied a speedy trial because he was incarcerated from September 13, 1971 until April 9, 1973 without a trial. The Superior Court correctly noted that in the petition for habeas corpus in the District Court, Judge Layton found no constitutional violation on this basis. He noted that the following was uncontradicted:

> "[T]he first two delays were at the request of petitioner's [Derrickson's] attorneys and over the objection of the State of Delaware, and the third delay was by consent of all counsel, in anticipation of a ruling by the Delaware Supreme Court on capital punishment."

*Derrickson v. Anderson, supra.*

Defendant does not argue that this summation is inaccurate, nor can he reasonably contend that efforts were not under way to move the case along to trial. The docket, indeed, shows continuing action of many kinds, including a bail-bond hearing held on defendant's petition; a motion by defendant for production of documents; a letter memorandum by defendant relating to the *corpus delicti* and the testimony of Danny Davis concerning defendant's confession; a Rule 16 motion for discovery, production and examination; a motion for psychological and psychiatric examinations; a motion for deposition—and more.

Collectively, all of this reflects careful pre-trial preparation and exploration by defense counsel. And, collectively, it contributed to a delay in trial about which defendant may not now complain, at least in the legal sense. We also note that he did not, at any time before verdict, demand a speedy trial or raise the issue. Cf. *Barker v. Wingo*, 407 U.S. 514, 528, 92 S.Ct. 2182, 2191, 33 L.Ed.2d 101 (1972).

There is no ground for Rule 35 relief based upon a failure to provide a speedy trial.

### C.

■ Derrickson next contends that he was denied the effective assistance of counsel.[1] He points to counsel's tolerance of the long delay before trial, and to counsel's performance "in other respects." This issue had not been ruled upon before the Rule 35 motion was filed.

The Superior Court denied relief on this basis because the long delay between arrest and trial was "justified" and because Derrickson had not otherwise set forth specific instances of ineffective assistance.

The test for deprivation of the right to effective assistance on a motion for post-conviction relief is whether, under all the circumstances, "trial counsel was so incompetent that the accused was not afforded genuine and effective legal representation." *Harris v. State*, Del.Supr., 293 A.2d 291, 293 (1972). While "justified" may not be the appropriate word to use for decisional purposes, we cannot say that the Superior Court was clearly wrong in ruling as it did. See *Isijola v. State*, Del.Supr., 340 A.2d 844 (1975). We have already listed some of the careful pre-trial preparation by defense counsel and, in our judgment, that reflects competence, not its opposite.

In the absence of a more detailed complaint, or specific instances of attorney incompetence, we cannot say that the Trial Judge abused his discretion in denying the motion without a hearing on this ground. See *Shy v. State*, Del.Supr., 246 A.2d 926 (1968). Defendant's trial counsel are highly respected practitioners and tacticians and without an identification of what defendant may have in mind, we will not assume that his lawyers were incompetent or that they failed to meet the requisite standard.

1. Defendant's current counsel began representation after the trial and appeal and before the second habeas corpus petition was filed.

### D.

Next, defendant challenges the technical sufficiency of a search warrant which resulted in the production of evidence used against him. The Superior Court has correctly pointed out that this issue was determined in the prior appeal. 321 *A.2d* at 500–502. Indeed, defendant now concedes that this point is meritless.

### E.

■ Derrickson next contends that the testimony of Danny Davis should not have been admitted into evidence because it unduly prejudiced him in two ways. First, he complains that Davis violated the Trial Judge's sequestration order. But that issue was raised in the prior appeal and was decided against defendant. 321 *A.2d* at 499–500. There is no merit to this part of the argument.

■ Second, defendant contends that Davis suffers from a psychological disorder that causes him to "fabricate stories," and that this disorder resulted in defendant's inability to cross-examine Davis effectively. This issue has not been dealt with before, and the Superior Court did not rule on it. There is no need, however, for further consideration because the contention is without merit. Defendant *did* cross-examine Davis (covering some thirty-five pages of trial transcript) and *did* present other evidence to discredit Davis. Davis' credibility was one factor to be weighed by the jury, but we cannot say that he was incompetent to testify as a matter of law.

### F.

■ Derrickson next argues that the jury was unduly prejudiced against him as a result of an incident in a "coffee room" used by the jurors.

The casual and careless way in which guards from the Correctional Center exercised their responsibility for custody of defendant while he was in the Courthouse was a matter of concern to the Trial Judge.[2]

Apparently, defendant was permitted to have contacts with other persons in a manner wholly inconsistent with his prisoner status, but we focus on his contacts with the jurors or some of them. There were two such incidents, one in a so-called "coffee room" in which defendant, unhandcuffed, was permitted to mingle with the jurors and, a second, when defendant was allowed to sit in a hall chair next to one of the jurors.

The Trial Judge advised counsel that the foreman of the jury had reported these events to him and expressed concern about the security surrounding defendant. Thereafter the Trial Judge, through the Attorney General, communicated with the guards and it does not appear that there were any more such contacts.

There were also reports to the Trial Judge that defendant had apparently tried to communicate with jurors by smiles, nods and in other ways. The transcript shows a full exploration of this by the Court with counsel, after which the Trial Judge, with the consent of all counsel, put a question to the jury, with the result shown. Thus:

"THE COURT: Ladies and gentlemen, before we start the proceedings this morning I would like to ask you a question.

The question is very simply this. Has anything occurred during the conduct of this trial, either in or outside of the courtroom, excluding, of course, the trial proceedings themselves, which would tend to influence your judgment or prejudice you in any way so that you would be unable to render a fair and impartial verdict based solely on the evidence presented during the course of this trial?

THE FOREMAN: Your Honor, we discussed that, and the answer is no.

THE COURT: Thank you, Mr. Foreman.

If after reflecting on this question, if any of you feel that you would like to discuss anything relative to the question

2. It is assumed that the Superior Court has taken all necessary corrective action to avoid any repetition of the careless action of the guards in this case.

with me, I will be in chambers during the noon recess and would be very glad to entertain any discussion.

You may proceed . . .."
(T–457)

Considering all of the circumstances, we conclude that there was no reversible error arising from the contacts between defendant and jurors.

As to any attempt to influence the jurors, defendant may not parlay such an effort (if any there was) into reversible error. Defendant's counsel was informed by the Trial Judge as to what the foreman of the jury had reported to him and, if there was a fact controversy as to what had occurred, defendant could have requested an opportunity to be heard. He did not do so. For this reason we cannot say that the Trial Judge's failure to examine the jury foreman on the impact of defendant's alleged efforts to influence the jury was reversible error.

In sum, it appears that the jury's principle concern centered on the security issue and the Trial Judge took the necessary corrective action as to that. The transcript shows that the matter, with its implication of prejudice to defendant, was fully explored by the Court with counsel and that a question, in an agreed form, was put to the jury. Under all circumstances, we find no reversible error arising from the incidents.

### G.

◼ Defendant also alleges that the Trial Judge erred by excluding from evidence the deposition of Wayne McNeal's mother taken before the trial. McNeal's mother testified on the deposition that her son had told her that he had suffered a "slight coronary." At trial, a medical examiner testified that the victim of the homicide had a normal heart. Defendant sought to use Mrs. McNeal's deposition to prove that McNeal was not the victim because he had an abnormal heart. The Trial Judge ruled that the deposition contained inadmissible hearsay.

The Superior Court reviewed the relevant testimony any denied relief on this ground.

We agree with that decision because McNeal's statement to his mother was a declaration of a "past bodily condition" or event and so it is not within an exception to the hearsay rule. Moreover, the deposition had very low probative value on the point in question. The Trial Judge correctly pointed out that McNeal's statement was a medical conclusion, which he lacked competence to make. And defendant's trial counsel stated that he did not think "there is any independent verification medically of any heart attack." Under the circumstances, exclusion of the deposition was proper.

### H.

◼ Defendant next contends that it was error for the Trial Judge to discharge a juror after several days of trial, replacing her with an alternate. The juror was discharged because her son had been indicted for manslaughter in an unrelated incident the day before. At the State's request, the Trial Judge examined the juror, then discharged her.

The Superior Court reviewed the relevant portions of the record and denied relief on this basis. Whether or not a juror should be excused during trial is committed to the discretion of the Trial Judge, 76 *Am.Jur.2d*, Trials § 1078 (1975), and we find no abuse thereof in this case. Quite clearly, the Court was only concerned with the effect the juror's personal problem would have on her impartiality. There is no indication that removing the juror adversely affected defendant, nor has he shown any prejudice resulting from the service by the alternate juror.

### I

◼ We now consider Derrickson's final argument. He was asked at trial whether he had ever been convicted of a felony and, based upon discussions with counsel, he gave a negative answer. Derrickson had, in fact, been convicted of two felonies while a minor, but his lawyer was of the opinion that those offenses were not considered felonies for that purpose. During a recess, the State brought the two felonies to the atten-

tion of the Trial Judge. Upon reconvening, the Trial Judge made the following remarks to the jury:

"Ladies and gentlemen, during the course of the recess the attorneys and the Court have conferred in chambers with respect to the last question asked of the defendant, the question being: 'Mr. Derrickson, have you ever been convicted of a felony?'

I have reviewed the record and I have ruled as a matter of law that the defendant has in fact been convicted of two felonies.

Now, the purpose of asking the question as to whether you have or have not been convicted of a felony is to attack the credibility of the witness as to the truth and veracity of his testimony. It has no substantive value and I will so instruct you at the end of this trial, except as it goes to the credibility of this witness in giving his testimony as to the case now before you."

Although technically correct, these remarks, taken alone, might have led the jurors to believe that defendant had deliberately lied about his prior convictions and that should affect their willingness to believe the remainder of his testimony. The remarks, however, must be considered in the trial context. And that shows that shortly after the Trial Judge made his remarks, defense counsel asked Derrickson why he had mistakenly denied having any felony convictions and defendant fully explained his mistaken belief.

The Superior Court ruled that any prejudice caused by the Trial Judge's remarks to the jury was cured by the defendant's testimony. Although this is a close question, we believe that any error inadvertently introduced by the remarks of the Trial Judge was rendered harmless by the testimony of defendant.

III

Some of the contentions made by defendant may not raise constitutional issues, but we have considered them all and concluded that none supports the motion for post-conviction relief under Rule 35. Those which have already been decided before are patently meritless. Of those that are raised for the first time by the motion, none shows such a deprivation of defendant's constitutional rights as to require relief.

\*       \*       \*       \*       \*       \*

Affirmed.