Michael HOLMES, Defendant
Below, Appellant,

v.

The STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted Sept. 10, 1980.
Decided Sept. 25, 1980.

John Williams (argued) of Morris, Nichols, Arsht & Tunnell, Dover, and Dennis Reardon, Asst. Public Defender, Dover, for defendant–appellant.

James E. Liguori (argued), Deputy Atty. Gen., Dover, for plaintiff–appellee.

Before HERRMANN, C. J., and QUILLEN and HORSEY, JJ.

QUILLEN, Justice:

The defendant, Michael Holmes, appeals his convictions of Burglary in the Second Degree and Misdemeanor Theft. After consideration of the issues raised on appeal, we affirm the judgment of the Superior Court.

I

Pursuant to a motion made by the prosecution, in advance of opening statements, the Trial Judge limited the opening statement of counsel, stating: "Counsel has an opportunity to make a complete opening but the complete opening will be limited to what you intend to prove in the case." Defendant claims this ruling (a) was a violation of his federal due process protection, (b) was a violation of his right to counsel, and (c) was an abuse of discretion.

■ The Trial Court did not prohibit defendant's counsel from making an opening

statement. Defendant's counsel could have made an opening had he chosen to do so. Even if he was uncertain that he would offer evidence, he could make good faith comment on what he reasonably expected to prove by cross–examination. *U. S. v. Persico,* 2d Cir., 305 F.2d 534, 537 (1962). In fact, he reserved the opportunity to open after the close of the prosecution's case in chief, whereupon he again chose not to open. We are unable to say that the limitation imposed was a deprivation of due process.

More particularly, the defendant cites many cases in support of his denial of right to counsel claim, most holding that the total denial of closing argument is unconstitutional. See, e. g. *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *United States v. Walls,* 6th Cir., 443 F.2d 1220 (1971). None address the limitation of an opening statement. The logic of those cases does not apply here. The absence of a total prohibition, as well as the fact that the cited cases involved closing argument, not opening statements, materially distinguishes such authority from the case before us. We find no constitutional violation here.

As to abuse of discretion, it appears that the Trial Judge was acting to prevent defense counsel from making comments as to the law. We believe this limitation was not an abuse of discretion.

"The proper function of the opening for accused is to enable him to inform the court and jury what he expects to prove. It is not and should not be permitted to become an argument on the case, or an instruction as to the law of the case...."

23A C.J.S. Criminal Law § 1086 at 109 (1961); see *Wilhelm v. State,* Md.Ct.App., 326 A.2d 707, 714 (1974). See also *Pritchard v. Henderson,* Del.Super., 19 Del. (3 Penne.) 128, 132–33, 50 A. 216, 218 (1901), rev'd on other grounds, Del.Supr., 321 A.2d 497 (1974). This is exactly what the Trial Judge did at defendant's trial. He limited

the defense counsel's opening statement to what counsel intended to prove, so that argument on matters of law would not be improperly brought before the jury.[1]

While in hindsight we lean to the view that opening statement limitations on motion might better await events and that reference, as distinct from lengthy discourse, to such fundamental concepts as the presumption of innocence and proof of each element beyond a reasonable doubt should be permitted, we cannot conclude retroactively that the limitation imposed was a reversible abuse of discretion. Nor do we think the prosecutor's opening comment to the effect that what he said was not evidence was sufficiently violative of the limitation imposed to require reversal. Indeed, "since an opening statement is not evidence, no adverse inference should arise against defendant if he chooses not to make a statement." 3 C. Torcia, Wharton's Criminal Procedure § 494 at 383 (12th ed. 1975). In short, there is, in our judgment, clearly no reversible error from the limitation imposed and the statement of the prosecutor.

## II

Defendant asserts that the Trial Court abused its discretion in excluding the chief investigating officer from a witness sequestration order and in not requiring that he testify first.

Defendant requested the Trial Court to order all witnesses sequestered. The Trial Court complied, excepting the chief investigating officer. Defendant then requested the Trial Court to compel the chief investigating officer to testify first, so that he could not be influenced by, nor tailor his testimony to, the statements made by the other witnesses. The Trial Court refused.

It is, of course, beyond dispute in Delaware that sequestration is discretionary with the trial judge. *Grace v. State,* Del.Supr., 314 A.2d 169 (1973); *Derrickson v. State,* Del.Supr., 321 A.2d 497 (1974); *Shields v. State,* Del.Supr., 374 A.2d 816 (1977), cert. denied 434 U.S. 893, 98 S.Ct.

---

1. Naturally, where a defense is tendered, a statement of the expectation of proof will necessarily include a reference to the legal theory embodied in the defense evidence, e. g., innocence, alibi, mental illness.

271, 54 L.Ed.2d 180 (1977). Particularly, this Court has recognized that the chief investigative officer may be excepted from sequestration because "frequently his knowledge of the case makes him an important trial aid for the prosecuting attorney." *Grace*, 314 A.2d at 170.

▮ Indeed, in the case before us, counsel for the prosecution stated in pre–trial discussion that the chief investigating officer "will help me in the case as it proceeds especially with witnesses." Accordingly, in light of the reliance placed upon the officer by the prosecution, it was not an abuse of discretion to except him from the sequestration order.

▮ We also decide that there was no error in allowing the chief investigating officer to testify as the fourth prosecution witness. We have examined the record carefully and are satisfied that the testimony of the first three witnesses was, generally, concerned with different chronological matters than was the officer's and, accordingly, did not readily lend itself to fabrication. Defendant's opening brief supports this conclusion, wherein he states that the officer's testimony "was not cumulative in nature". Defendant adds that the officer was the State's "most important" witness because he testified concerning an allegedly incriminating statement made by defendant which, we note, was made when none of the other witnesses were present. We also note that there may have been tactical considerations of which we are unaware that influenced the order of the prosecution's case. Contrary to the better practice, the record does not record such considerations, and thus we are hesitant to speculate as to them. In any event, we find no error.

## III

▮ Defendant next argues that his arrest was invalid under *Payton v. United States*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), and that all incriminating statements subsequently obtained should be suppressed as "fruit of the poisonous tree". *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

This argument lacks merit.[2] Defendant was arrested by the police officer when found sleeping in his father's apartment. The police officer went to the apartment only to question defendant's father, not to arrest the defendant. The father admitted the police officer. The two cases consolidated in *Payton*, on the other hand, involved warrantless nonconsensual entries into homes in order to make routine felony arrests. The dissimilarity between *Payton* and the case before us is apparent, and, we believe, dispositive of defendant's argument. In *Payton*, the arresting officers went to the defendants' homes in order to make an arrest with sufficient time to obtain a warrant. Here, the police officer did not go to Mr. Holmes' apartment in order to arrest the defendant. The discovery, upon admission, of the defendant's presence was fortuitous. We think it somewhat tortured to read *Payton* to have required the police officer to have left the defendant, obtained a warrant, then to have returned and executed it.

## IV

Defendant next alleges that he was prejudiced because the Trial Court failed to excuse for cause from the jury panel the wife of a policeman employed by the same city as the chief investigating officer. Defendant's counsel consequently used his first peremptory challenge to prevent her from sitting on the jury. Defendant contends this failure to excuse a juror "with obvious potential for prejudice" was an abuse of the Trial Court's discretion requiring reversal.

▮ Whether to excuse a juror is, of course, discretionary. *Johnson v. State*, Del.Supr., 311 A.2d 873 (1973). We need not review the Trial Court's discretion in this case, however. Defendant only exercised four of his six peremptory challenges in accepting the jury panel. We fail to see how he could possibly be prejudiced in this case where he was tried before a jury that he selected without using up his allotted peremptories.

2. We assume, for purposes of this argument only, that *Payton* is retroactive.

## V

 Defendant's final argument is that the Trial Court abused its discretion in not granting a mistrial or excusing a juror, Theodore E. Johnson, Jr., who, recognizing the victim after commencement of the case, told the Trial Judge that he had seen and spoken with her before at Delaware State College, where he was employed and she attended classes. In response to the Trial Judge's questioning out of the presence of the rest of the jury, Johnson stated that he could be fair and impartial. Counsel had no questions of the juror. The Trial Judge allowed him to remain on the jury, and the trial continued. We find no abuse of discretion in light of a nodding acquaintance within a school community. *Johnson v. State*, Del.Supr., 311 A.2d 873 (1973).

The judgment of the Superior Court is affirmed.