STATE of Delaware

v.

Bruce L. PORTER, Defendant.

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 17, 1990.
Decided: Sept. 27, 1990.

On Defendant's Application to Preclude as Evidence Certain Hearsay Statements Allegedly Made by the Deceased. Provisionally Granted.

Kathleen Jennings, and Adam L. Balick, Deputy Attys. Gen., Wilmington, for State.

Louis B. Ferrara, of Aerenson, Ferrara & Lyons, Wilmington, for defendant.

## OPINION

BARRON, Judge.

### I. BACKGROUND

The defendant, Bruce L. Porter, is charged with one count of Murder in the first degree and one count of Possession of a deadly weapon during the commission of a felony. The crimes allegedly occurred on or about February 4, 1990, in New Castle, Delaware. The defendant is charged with intentionally shooting the deceased, Dyan Reed, in the head with a handgun. Porter and Reed had been seeing each other for several months prior to the incident. When the incident occurred, the parties were not living together, although Ms. Reed occupied premises in close proximity with those of the defendant.

Trial is tentatively scheduled to commence on November 12, 1990. Defense counsel has raised the possibility of presenting evidence that the killing was an accident or was done in self-defense. In a letter dated September 17, 1990, defense counsel has indicated to the Court that he objects to any statements the State intends to offer concerning hearsay statements allegedly made by Dyan Reed containing alleged death threats directed to her by the defendant. The State has indicated that any such statements should come in as an exception to the hearsay rule under Rule 803(3) of the Delaware Uniform Rules of Evidence.

Because of the importance of this issue as it bears on the trial of the case, I will treat the defendant's objection as a motion *in limine* and undertake herein a review of the relevant law.

## II. THE LAW

Testimony showing a statement of present intention or an existing state of mind of the deceased was described by the Delaware Supreme Court in *Derrickson v. State*, Del.Supr., 321 A.2d 497 (1974), as "a universally recognized exception to the hearsay rule." The Court cited with approval the case of *State v. Long*, Del.Ct.O. & T., 123 A. 350 (1923), which announced five requirements as the necessary foundation for the admission of such evidence:

1. The statement must be relevant and material;

2. It must relate to an existing state of mind when made;

3. It must be made in a natural manner;

4. It must be made under circumstances dispelling suspicion; [1]

5. It must contain no suggestion of sinister motives.[2]

The defendant in *Derrickson* had contested the admission of Frank Leister's testimony. Leister had employed the victim of the homicide, Wayne McNeal, at Leister's service station where McNeal had worked for several months prior to his death. Shortly before Leister had last seen McNeal, the deceased had asked Leister for time off so that he could accompany the defendant to Delaware to change registration tags on a car. The Supreme Court concluded that the testimony was competent to show McNeal's present purpose or intention when the statement was made. The Court found that the statement was properly admitted, the five foundational requirements having been met.

In a subsequent Delaware murder prosecution, the trial court allowed as evidence a handwritten note of the victim in which she stated that things were not working out with the defendant. On appeal, the defendant contended that the note was inadmissible hearsay. Our Supreme Court disagreed:

The note was not offered as proof that the victim and the defendant were having problems, but was offered to show the victim's state of mind as it related to the defendant's defense of extreme emotional distress, and was offered to impeach his testimony. The defendant testified at considerable length regarding his belief that he and the victim were not having problems in their relationship. A substantial part of this testimony was his recollection of what the victim had told or written him. That testimony would have been hearsay had it been offered to prove the status of the relationship. The State's evidence was offered to show that the defendant did not, in fact, have the beliefs he professed in his direct testimony.

Because the note was not offered to prove the truth of the matters asserted therein, we conclude that it was admissible hearsay. It was the defendant who placed this point in issue and the note was properly introduced to impeach his credibility on this matter. The defendant recognized the victim's handwriting and the State was properly allowed to ask whether the thoughts expressed in the note had been communicated to the defendant.

In any event, this Court has held that reliable evidence of a victim's state of mind falls within an exception to the hearsay rule. *Derrickson v. State*, Del. Supr., 321 A.2d 497 (1974). We are satisfied that the evidence in question meets the requirements of admissibility approved in *Derrickson*.

*Casalvera v. State*, Del.Supr., 410 A.2d 1369, 1373 (1980).

On July 1, 1980, approximately six months after the *Casalvera* decision, the Delaware Uniform Rules of Evidence (D.R.E.) became effective in all of Dela-

---

1. The Court in *Derrickson*, explained that "[t]he requirement that the statement be made under circumstances absent suspicion refers to the circumstances surrounding the declaration itself, not the contemplated action related to the declaration." 321 A.2d at 503.

2. Here, "the focus is upon the motive for making the statement, not the nature of the planned activity." *Derrickson v. State*, 321 A.2d at 503.

ware's State Courts. Rule 803(3) of the D.R.E. states as follows:

### RULE 803. HEARSAY EXCEPTIONS; AVAILABILITY OF DECLARANT IMMATERIAL.

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*    \*    \*    \*    \*    \*

(3) *Then Existing Mental, Emotional Or Physical Condition.* A statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.

D.R.E. 803(3) was interpreted in the case of *Re v. State*, Del.Supr., 540 A.2d 423 (1988). At trial, the State had called one Danielle Stoner to testify to statements which the victim, Jayne Griffin, had made to her one and one-half weeks before Griffin's death. Griffin had told Stoner that Re had threatened to kill her and that Re had proclaimed "that he would just act like he was crazy and get off." On appeal, Re contended that Stoner's testimony constituted inadmissible hearsay. Our Supreme Court, however, held that this testimony had been properly admitted:

Hearsay, under D.R.E. 801(c) is a statement made outside of trial which is 'offered in evidence to prove the truth of what it asserts.' Re's statement to his wife was not offered to prove that he would kill her, or that he would feign insanity. Rather, the statement was offered to rebut Re's claim that he killed his wife due to extreme emotional distress.

Griffin's statement to Stoner, relating what Re had told her, while technically hearsay, is admissible under D.R.E. 803(3) as one of the exceptions to D.R.E. 802. That exception allows for the admission of statements which reflect the state of mind of the speaker at the time of the statement. Griffin's statement to

Stoner demonstrates Griffin's fear that Re would kill her. This fear is contrary to Re's position that Griffin incited stress in him which ultimately led him to kill her. Thus, Griffin's state of mind was relevant, and the trial judge properly admitted the statements.

*Id.* at 430.

While the *Re* case does not specifically make reference to the five requirements of admissibility approved in *Derrickson v. State, supra,* there is nothing in the decision which indicates the demise of such requirements. Logic would seem to indicate that the five *Derrickson* foundational requirements of admissibility remain viable after Delaware's adoption of its Uniform Rules of Evidence. This is so since such evidence can be most prejudicial unless safeguards are maintained. The scholarly opinion by Judge MacKinnon in *United States v. Brown*, 490 F.2d 758 (D.C.Cir. 1973) highlights the need for a showing of substantial relevance before such evidence may be admitted:

The threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is some substantial degree of *relevance* to a material issue in the case. While there are undoubtedly a number of possible situations in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant's claim of self-defense as justification for the killing. When such a defense is asserted, a defendant's assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance. Second, where the defendant seeks to defend on the ground that the deceased committed suicide, evidence that the victim had made statements inconsistent with a suicidal bent are highly relevant. A third situation involves a claim of accidental death, where, for ex-

ample, defendant's version of the facts is that the victim picked up defendant's gun and was accidentally killed while toying with it. In such cases the deceased's statements of fear as to guns or of defendant himself (showing he would never go near defendant under any circumstances) are relevant in that they tend to rebut this defense. Of course, even in these cases, where the evidence is of a highly prejudicial nature, it has been held that it must be excluded in spite of a significant degree of relevance. (Emphasis in original.)

*Id.* at 767.

After analyzing numerous court opinions on the issue, many being incapable of reconciliation, Judge MacKinnon determined as follows:

The rule then to be distilled from the better reasoned decisions is that a victim's extra-judicial declarations of fear of the defendant are admissible under the state of mind exception to the hearsay rule with a limiting instruction only if there is a manifest need for such evidence, i.e., if it is relevant to a material issue in the case. Where there is a substantial likelihood of prejudice to the defendant's case in the admission of such testimony, it is inadmissible if it bears only a remote or artificial relationship to the legal or factual issues raised in the case. Even where there is substantial relevance, the additional factual matters in the statement may simply be too explosive to be contained by the limiting instruction, in which case exclusion of the testimony is also necessitated.

The trial judge must undertake the familiar balancing process in which the relative degrees of relevance and prejudice are weighed and determined....

*Id.* at 773, 774.

In homicide cases, "if there is no defense which brings into issue the state of mind of the deceased, evidence of fears or other emotions is ordinarily not relevant. But where a defense such as that of accident or self-defense is interposed ..., courts have generally allowed the admission of evidence of the victim's fears, as probative of the question whether that person would have been likely to do the acts claimed by the defendant." *State v. Parr*, 93 Wash.2d 95, 606 P.2d 263, 267 (1980). *See also People v. Atchley*, 53 Cal.2d 160, 346 P.2d 764 (1959), *cert. dismissed* 366 U.S. 207, 81 S.Ct. 1051, 6 L.Ed.2d 233 (1961) (holding admissible a letter which a woman had purportedly written to a judge 2 days before her death, stating that her husband had threatened her and she feared him, where the defendant husband claimed she had threatened him); *People v. Finch*, 213 Cal.App.2d 752, 29 Cal.Rptr. 420 (1963) (holding admissible a deceased wife's statements of fear of her husband and threats made by him, where he claimed that he was attempting to disarm her); *State v. Boliek*, Mo.Supr., 706 S.W.2d 847 (1986) (holding admissible testimony from 2 witnesses that, within days immediately preceding the victim's departure from Kansas City with the defendant, the victim stated that she feared that the defendant was going to kill her, where the defendant claimed accident); *State v. Magruder*, Mont.Supr., 234 Mont. 492, 765 P.2d 716 (1988) (holding admissible testimony of the victim's daughter regarding a telephone call from defendant to the victim hours before the victim's death and the victim's emotions following the telephone call, where defendant claimed accident). *But see Hunt v. State*, Fla.App., 2 Dist., 429 So.2d 811 (1983) (holding inadmissible testimony dealing with the deceased victim's fear of defendant, where defendant claimed the victim had been accidentally shot).

A case which, in my view, correctly reflects the balancing test of relevance verses prejudice which I believe must be utilized in homicide cases dealing with Rule 803(3) type statements is that of *State v. Auble*, Utah Supr., 754 P.2d 935 (1988). There, the defendant charged error in the admission of a hearsay statement, allegedly made by his wife shortly before her death reporting that the defendant had recently threatened to kill her.

At the beginning of the trial, the State offered an *in limine* motion for admission of the hearsay statement concerning the

defendant's earlier threat to kill his wife, the victim. The trial court preliminarily excluded this evidence, stating that it would reconsider if a self-defense argument was raised during trial. The defendant took the stand and claimed that the shooting was not intentional. According to him, he walked in their bedroom and saw his wife holding his hunting rifle. She came toward him, pushing the rifle at him and urging him to take it and kill himself. He backed away in fear and tried to take the rifle away from her. They struggled and the rifle discharged twice, killing the victim. After this testimony, the trial judge determined that the defendant's testimony could be the predicate for a self-defense claim. The court then allowed, over defense objection, a friend of the victim's to testify that the victim had told him one week before the incident, that in the past, the defendant had threatened to kill *himself* if she, the victim, moved out; but that the defendant had now instead threatened to kill *her* if she moved out. At the close of the trial, the trial court cautioned the jury not to consider the hearsay statement attributed to the victim for the truth of the matter asserted, but only as it might reveal the victim's state of mind at the time of her death.[3]

On appeal, the defendant argued that the hearsay evidence had such strong potential for unfair prejudice and such minimal probative value that it should have been excluded under Utah Rule of Evidence 403. The Utah Supreme Court held that the trial court had not abused its discretion in admitting the evidence under Rule 403:

> In *State v. Wauneka*, 560 P.2d 1377 (Utah 1977), following the reasoning of *United States v. Brown*, 490 F.2d 758 (D.C.Cir.1973) we enunciated general rules on the admissibility of evidence of out-of-court statements made by a homicide victim who reports threats of death or serious bodily injury made by the defendant. *Wauneka* held that such hearsay evidence is generally inadmissible, but may be admitted under the state-of-

mind exception to the hearsay rule if it is not used to prove the truth of the matter asserted and if certain other criteria are met, specifically: (1) the evidence is probative of the decedent's state of mind at the time of the killing, and (ii) the decedent's state of mind has already been placed in issue by defense evidence or argument that the killing was (a) a suicide, (b) in self-defense, or (3) an accident to which the decedent contributed by acting as an aggressor.... In the present case, the trial court correctly followed *Wauneka*. [The defendant's] testimony was sufficient to raise issues of self-defense and accident, thus placing [the victim's] state of mind in issue and Making the testimony admissible under rule 803(3).

> [The defendant] argues that even if *Wauneka* and rule 803(3) were satisfied, the evidence must still pass muster under rule 403 and it cannot do so. Rule 403 allows the exclusion of relevant evidence 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....' Utah R.Evid. 403. We agree that evidence of threats which passes muster under rule 803(3) must also be scrutinized under rule 403. The policy underlying the strict admissibility standard of *Wauneka*, a policy which we reaffirm, is that great potential for unfair prejudice inheres in such evidence and it ought to be admitted only when it is directly relevant to a material issue raised by the defense.... The danger of such evidence is that the jury is likely to misuse it as evidence of the defendant's state of mind rather than the victim's. *See id.; United States v. Brown*, 490 F.2d at 766. It is improper to allow the jury to use such hearsay evidence to form conclusions about the defendant's intentions. And limiting instructions, which are a *per se* requirement, may not be sufficiently effective.... That is the

---

**3.** A limiting instruction given at the time of the testimony would have been preferable. *See*

*United States v. Brown*, 490 F.2d at 777, 778.

sort of unfairness that rule 403 is designed to prevent.

\* \* \* \* \* \*

Our examination of the record reveals no abuse of discretion. [The victim's] state of mind was put directly into issue by [the defendant's] testimony, and the hearsay statement was highly probative on that issue. Based on that statement, the jury could reasonably have found that [the victim] feared her husband might kill or seriously injure her and, therefore, she would not have confronted him aggressively and attempted to force a loaded gun upon him in the midst of a heated argument. The witness who testified about the hearsay threat was a long-time acquaintance of [the victim's], and there was no evidence to suggest that his testimony was unreliable. Thus, the evidence had significant probative value, the same facts could not be reasonably proven by alternative means, and the potential for prejudice was reduced by a carefully drafted limiting instruction. Under these circumstances, the trial court did not abuse its discretion in admitting the evidence under rule 403.[4]

*Id.* at 937, 938.

■ The above cases point out that, with the adoption of the Delaware Uniform Rules of Evidence, additional admissibility requirements should be added to the five already enunciated in *Derrickson, supra,* and met before hearsay evidence is to be admitted under D.R.E. 803(3) in a homicide prosecution. Taking into account the five requirements of *Derrickson,* the Court believes that the following further require-

ments are also necessary to ensure a fair trial:

1. This evidence may only be admitted in rebuttal after evidence of accident, self-defense, suicide or extreme emotional distress has been presented by the defense;

2. It may only then be admitted if the trial court makes, upon balance, a determination on the record that its probative value is not substantially outweighed by the danger of unfair prejudice, *see* D.R.E. 403;

3. The deceased's statement, when made, must not have been too remote in time from the charged offense; and

4. Because such evidence is admitted for a limited purpose, a limiting instruction should be given contemporaneously with the admission of such evidence and as part of the jury instructions at the close of the case, *see* D.R.E. 105.[5]

■ In the Court's view, the proper way in which to test the proffered testimony under the *Derrickson* requirements and the additional requirements set forth herein is through a hearing held outside the jury's presence prior to the State's presentation of rebuttal evidence.

### III. CONCLUSION

Based upon the foregoing, the Court provisionally grants the defendant's application to preclude as evidence those hearsay statements made by the victim, Dyan Reed, containing alleged death threats made by the defendant, Bruce Porter. Of course, should evidence of accident, self-defense, suicide or extreme emotional distress be

---

4. The conditioning of such testimony is the usual practice given its potential prejudicial impact. *See, e.g., State v. Blanchard,* Minn.Supr., 315 N.W.2d 427 (1982), where the Court held that hearsay evidence concerning a homicide victim's fear of the defendant is admissible only under the following conditions: "a. The victim's state of mind must be a relevant issue. The victim's state of mind is generally relevant only where the defendant raises the defense of accident, suicide, or self-defense. b. The trial court must weigh the probative value of the evidence against the risk of unfair prejudice to the defendant. c. A proper limiting instruction must be given to the jury."

5. A limiting instruction substantially in the following form would, in the Court's view, be appropriate: "Ladies and gentlemen of the jury, statements of the deceased, ___, have been allowed as evidence in this trial. You are instructed that this testimony is to be considered by you only in connection with evaluating the state of mind of the deceased, and its effect, if any, on his/her subsequent conduct. You are not to consider this testimony to evaluate the state of mind or conduct of the defendant, ___." *See State v. Auble,* 754 P.2d at 938, fn 2.

raised by the defendant, the Court, on the State's application, will permit a revisitation of this issue through a hearing held outside of the jury's presence after the defendant has rested. If satisfied that the requirements for admissibility of such testimony have been met, as those requirements are set forth in this opinion, such evidence may come in during the State's presentation of rebuttal evidence.

It Is So ORDERED.