**Thomas J. CAPANO, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 110/149, 1999.**

Supreme Court of Delaware.

Submitted: March 3, 2000.

Decided: March 17, 2000.

---

89. *Id.*

Joseph M. Bernstein, Wilmington, Delaware, for appellant.

Ferris W. Wharton, State Prosecutor, Loren C. Meyers, Chief of Appeals Division, Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND and HARTNETT, Justices, and CHANDLER, Chancellor,[1] constituting the Court en Banc.

VEASEY, Chief Justice, for the majority:

Before this Court is a procedural motion in an appeal pending in a death penalty case. The motion by the defendant-appellant, Thomas J. Capano, is for a limited remand of proceedings to enlarge the record on appeal. The basis of the motion is the contention that an immediate evidentiary hearing is needed for this Court to determine whether the conduct of the trial and subsequent death sentence "may have been consciously or unconsciously influenced by a motive or desire by [Judge William Swain Lee, the trial and sentencing judge] to enhance his image for political purposes through trial publicity." Although the Court declines an immediate remand, the Court's final decision on the merits of the issues raised by the motion is deferred pending full briefing in accordance with this Opinion.

### Procedural Posture of the Proceedings

Capano was convicted on January 17, 1999, by unanimous vote of a jury, of first degree murder of Anne Marie Fahey. After a penalty hearing, the jury, on January 28, 1999, voted 11 to 1 that the State had established beyond a reasonable doubt the statutory aggravating circumstance that the murder was premeditated and the result of substantial planning. The jury also found that the aggravating circumstances outweighed the mitigating circumstances by a vote of 10 to 2. Judge Lee, on March 16, 1999, sentenced Capano to death.

Under Delaware statutory law,[2] an automatic appeal was docketed in this Court on March 22, 1999. While that automatic appeal was pending, Capano filed his own timely appeal on April 9, 1999. These appeals were later consolidated. Before further proceedings were undertaken in this Court, Capano moved to remand to the Superior Court to present a motion for new trial in the Superior Court. That

---

1. Designated pursuant to Art. IV, § 12, of the Delaware Constitution and Supreme Court Rules 2 and 4.

2. 11 *Del.C.* § 4209(g).

motion to remand was granted on May 4, 1999, and this Court retained jurisdiction.[3] The motion for new trial was submitted to Judge Lee, after briefing and argument, on July 25, 1999. Judge Lee decided the motion in an opinion dated September 1, 1999.[4]

During the time that the motion for new trial was pending, Capano sought to have Judge Lee recuse himself from further proceedings in the matter. This attempted recusal first took the form of a request in a letter from Capano's counsel dated May 7, 1999, citing a May 5, 1999 newspaper article suggesting that Judge Lee may run for Governor of Delaware, and referencing the national attention Judge Lee had received as the presiding judge in the *Capano* case. On May 10, 1999, Judge Lee declined the request, noting that the pending motion "require[d] the attention of the judge who presided over the trial" and that "my ability to impartially address these issues has not been affected by the trial's impact on other aspects of my life."

A second recusal request was made on May 18, 1999, citing a number of news articles appearing in various publications between May 15, 1998, and May 6, 1999. Excerpts from those publications are included in the attachments to the motion before us. A formal Motion for Recusal was filed on August 20, 1999, noting Judge Lee's July 9, 1999 suit against the State of Delaware concerning his pension and possible candidacy for Governor. The motion also included newspaper articles quoting Judge Lee as linking his possible candidacy to his role as trial judge in the *Capano* case. On August 24, 1999, Judge Lee again declined to recuse himself.

Defense counsel wrote another letter on the subject to Judge Lee on August 25, 1999. Judge Lee responded on August 31, 1999, that he had not engaged in discussions with Republican party leaders about the possibility of seeking political office "until June, well after the conclusion of the trial." He added, "I will fulfill my judicial obligations by ruling on the outstanding motions for new trial. It is incumbent upon me as the trial judge to do so."

The next day, Judge Lee's opinion and order denying the motion for new trial were released. Thereupon, this case was returned to this Court for disposition of the appeal on the merits. After several extensions of time and allowances for relief from page limitations, Capano's brief in support of his appeal was filed on Monday, February 28, 2000. But four days before that brief was filed, Capano filed the motion now before us. We directed the State to file an answer to the motion, which was timely filed on March 3, 2000.

In its answer, the State contends that the facts as outlined by Capano "would not warrant disqualification of a trial judge." But the State nevertheless concludes that "[g]iven the nature of the charges leveled against the trial judge, he should be provided an opportunity to defend himself," and that "[u]nder the peculiar circumstances of this case, the State therefore concurs in the application that the case be remanded."

### *Discussion*

This is a death penalty case, thus invoking the sobering rubric that "death is different" when it comes to judicial decisions in the trial or appeal of death cases.[5] For that reason, we must weigh heavily Capano's extraordinary and unprecedented motion, measuring it against proper judicial process that would yield a fair result in this exceptional case.

3. *Capano v. State*, Del.Supr., Nos. 110/149, 1999, Walsh, J. (May 4, 1999) (Interim Order).

4. *State v. Capano*, Del.Super., 1999 WL 743679, 1999 Del.Super. LEXIS 324, Lee, J. (Sept. 1, 1999).

5. *Jackson v. State*, Del.Supr., 643 A.2d 1360, 1374 (1994) (citing *Woodson v. North Carolina*, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).

In our view, the granting of this motion in its present form at this stage of the proceedings may encourage an open-ended fishing expedition and transform a serious legal proceeding into a spectacle that could undermine public trust and confidence in the judicial system. Any inquiry into the thought processes of a trial judge creates risks that are the same as or greater than those involved in a *post facto* examination of a juror's conduct.[6]

There is a substantial risk that the mid-appeal hearing Capano seeks would not only delay unduly an orderly consideration of his arguments on appeal, but also would obscure or confuse the merits of the appeal. Moreover, granting the motion in its present form, is problematic in view of our jurisprudence on recusal issues:

> This Court has crafted a two step analysis in reviewing a trial judge's recusal decision: (i) whether, as a matter of subjective belief, the judge was satisfied that he or she could proceed to hear the case free of bias or prejudice concerning a party; and (ii) whether objectively there is an appearance of personal bias. *Los v. Los,* Del.Supr., 595 A.2d 381, 384–85 (1991). On appeal the reviewing court must be satisfied that the trial judge engaged in the subjective test and will review the merits of the objective test. *Id.* at 385. The standard of review is abuse of discretion.[7]

It may or may not ultimately become necessary for us to order a limited remand for some discrete evidentiary development of the recusal issue if it should appear likely that Judge Lee's political interests may have affected his decisionmaking to Capano's detriment in any material aspect. But it is premature for us to make that determination at this time and in the absence of a full development of the issues on appeal.

Capano has filed an opening brief in support of his appeal. This brief raises 16 issues for our consideration, including the recusal issue. In his opening brief, Capano provides us with 140 pages of reasoning, legal authorities and references to the record in support of the arguments as set forth in his Summary of Argument. We set forth that Summary in full:

## SUMMARY OF ARGUMENT

1. The defendant was entitled to jury instructions on the lesser included offenses to the charged offense of Murder First Degree under the Fourteenth Amendment's Due Process Clause. See, *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 2389, 65 L.Ed.2d 392 (1980). The State's case against Capano on first degree murder, was wholly circumstantial and rested on weak evidence of an outdated motive; questionable evidence of planning; and, consciousness of guilt evidence that was equally consistent with lesser included offenses. That evidence was strongly contested and was also rife with temporal and logical gaps. Defendant argues that the evidence was not

---

6. See D.R.E. 606(b); *Claudio v. State,* Del. Supr., 585 A.2d 1278, 1302 (1991). In his thoughtful dissent, Justice Hartnett agrees that an open-ended fishing expedition is to be avoided. But he would permit an inquiry into the trial judge's statements to the media, the circumstances of those statements and this problematic question: "What did the judge mean?" Containing the inquiry to a brief question-and-answer proceeding between defense counsel and Judge Lee is certainly not assured, or even likely in the view of the majority of the Court. If the new Superior Court Judge who is to preside over this proposed mid-appeal inquiry were to limit the inquiry too much in the defendant's

view, we may not have an adequate record and we may have to consider further alleged error arising from this inquiry itself. If the inquiry is not appropriately contained, a wide-range cross-examination of Judge Lee, possibly followed by a parade of other witnesses, with the result that in an unseemly trial-within-an appeal, could well ensue. In our view, it is premature and impractical to structure an error-free containment of the inquiry at this point.

7. See *Jackson v. State,* Del.Supr., 684 A.2d 745, 752–53 (1996) (citing *Los v. Los,* Del. Supr., 595 A.2d 381, 385 (1991)).

legally sufficient to support a conviction for murder first degree. Even assuming, however, that evidence was sufficient, the jury could well have concluded that the defendant was criminally responsible for Fahey's death, but had not been proved to have committed an intentional murder.

2. The defendant was entitled to jury instructions on the lesser included offenses to the charged offense of Murder First Degree based on a defense of "accident" under *Hall v. State,* Del.Supr., 431 A.2d 1258 (1981). First, the defendant's testimony about an accidental shooting—which the jury was free to believe in whole or in part—itself provided a rational basis for the jury to acquit the defendant of first degree murder, but convict him of a lesser offense. Second, the defendant's presentation of a defense of complete innocence did not deprive him of entitlement to lesser included offense charges, under both state law and federal constitution. The refusal to charge on lesser included offenses improperly skewed the verdict in favor of first degree murder, and requires that the conviction be vacated.

3. The State's theory of the case as to Capano's "motive" and "intent" rested nearly entirely on inadmissible hearsay evidence of the victim's out-of-court statements to her psychotherapists, family and friends. This evidence was inadmissible in the State's case-in-chief under *State v. Porter,* Del.Super., 587 A.2d 188 (1990) and its progeny. This evidence was also inadmissible under D.R.E. 803(3) (state of mind exception); D.R.E. 803(4) (statements for purpose of medical diagnosis); and, D.R.E. 404 (character and bad acts). Admission of this evidence also violated Capano's Sixth Amendment right to confrontation.

4. The trial court wrongly admitted evidence of Capano's "bad" character and "bad acts" in violation of *Getz v. State,* Del.Supr., 538 A.2d 726 (1988) and its progeny.

5. The trial court wrongly allowed the jury to hear evidence that Gerry Capano, the defendant's brother, who was a crucial witness for the State on the question of "planning" and "premeditation," had taken (and presumably passed) a lie detector test.

6. The trial court wrongly allowed the State to question the defendant on cross-examination about matters that were reasonably intended to provoke Capano to assert the lawyer-client privilege; and, (2) to ask him so-called "were they lying?" questions. These lines of questioning amounted to prosecution misconduct under *Hughes v. State,* Del. Supr., 437 A.2d 559 (1981) and its progeny.

7. The trial court wrongly allowed State's witnesses to express their personal opinion that Capano was "guilty."

8. The trial court abused its discretion in failing to properly investigate a claim of juror bias or misconduct and in summarily dismissing a juror during the trial.

9. The State's closing argument included an improper accusation that Capano had contorted and tailored his defense because he was able to be present during the entire trial and had access to much of the State's evidence. This argument violated the defendant's Sixth Amendment right to be present at trial and confront witnesses. See, *Agard v. Portuondo,* 117 F.3d 696 (2d Cir.1997), *rehearing denied,* 159 F.3d 98 (2d Cir. 1998), *cert. granted,* 526 U.S. 1016, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999).

10. The defendant's exclusion from "office conferences" where nearly all of the critical rulings in the case were made violated the defendant's Sixth Amendment right to be present at all stages of this trial.

11. The trial court abused its discretion in refusing to require the State to turn over to the defense admitted "*Brady* material" concerning Gerry Capano's use of drugs.

12. The trial court improperly limited the scope of the defendant's right of allocution in the penalty hearing in violation of *Shelton v. State,* 1999 Del. LEXIS 208 *85 n. 141, Del.Supr., 744 A.2d 465, 496, Veasey, C.J. (2000) (en banc).

13. The trial court's jury instruction on the elements of the statutory aggravating circumstance that the killing was "premeditated and the result of substantial planning" was erroneous as a matter of law.

14. The defendant's death sentence is invalid because the jury did not unanimously find that the State had established beyond a reasonable doubt that the killing was "premeditated and the result of substantial planning," which was the only statutory aggravating circumstance in the case.

15. The imposition of the death penalty in this case was "disproportionate" to the penalty imposed in similar cases.

16. The trial court should have granted the defendant's motion for recusal and the case should be remanded for an evidentiary hearing to review whether the rulings made by the trial court may have been influenced—consciously or unconsciously—by any motive on the part of the trial judge to use his role in the case, in presiding over a conviction and imposing the death penalty in a highly publicized case, to advance his political career.[8]

The State has yet to be called on to answer these arguments because its brief is not due to be filed. After full briefing by both sides, we will examine, in the context of all the issues before us, what, if any, of Capano's rights were prejudiced to the point that there was reversible error at trial or in the penalty phase.

In this motion Capano argues in a conclusory manner that the trial judge was politically ambitious and used the prominence he achieved by presiding over this high-profile case to advance his political ambitions. The motion generalizes that Judge Lee "may have been consciously or unconsciously influenced" by his political ambitions. Although the motion refers to various time periods during the proceedings in the Superior Court, it does not specify which rulings prejudiced Capano's rights, how those rights were prejudiced, and at what time periods or stages of the proceedings Capano's rights were prejudiced. The effect of the refusal of Judge Lee to recuse himself may turn on Capano's ability to convince this Court that he was prejudiced by discrete rulings or the imposition of the death sentence.

### Conclusion

All of these issues must be presented to us in an orderly and comprehensive manner through full briefing in the manner hereafter described. Accordingly, we decline at this time to grant the motion to the extent that it implies that we should stay the briefing on the merits of the appeal and order an immediate remand directing the broad inquiry requested. In our view it is more orderly to integrate briefing on issues raised by the motion to remand into the entire briefing schedule. This will require that (a) Capano file a supplemental brief on the issues raised by the motion; (b) the State file an answering brief on all issues; and (c) Capano file a reply brief on all issues.

The supplemental briefing should address discrete instances of judicial discretion by Judge Lee, the exercise of which may have (a) been motivated by his political ambitions; and (b) influenced the outcome of the trial to Capano's prejudice. Assuming that the briefing demonstrates an appropriate issue or issues for factual inquiry, a remand on discrete issues may be necessary. If a remand becomes necessary, we will address these issues in the context of all other issues on appeal. On the other hand, we may never have to reach the issues raised by the motion,

8. Appellant's Opening Brief at 2–5, *Capano v. State,* Del.Supr., Nos. 110/149, 1999.

depending on the outcome of other aspects of the appeal.

HARTNETT, Justice, dissenting.

The Motion for Limited Remand of Proceedings raises an issue of judicial prejudice that is unparalleled in this state. While I agree with my colleagues that we should not allow defendants an open-ended fishing expedition, nevertheless the serious nature of the charges should, in my opinion, be examined now rather than later, in fairness to the judge, the state, the defendant, this Court, and the administration of justice in this state.

The allegations of the defendant are based almost exclusively on hearsay contained in news articles. It is at least arguable, that some of the allegations, if true, might have had an impact on various discretionary rulings during the trial. The review of these evidentiary rulings should, in my opinion, be conducted after, and not before, there is a determination whether the defendant's allegations have any merit.

For example, Exhibit 13 that is attached to the Motion for Limited Remand of Proceedings contains a copy of a purported February 20, 2000 article that appeared in the *Philadelphia Inquirer* newspaper under the by-line of Sandy Bauers. It states in part:

> "Candidate Lee credits not only the Capano case *but also the verdict* for his popularity. The public was convinced of the defendant's guilt, and had Capano been acquitted, Lee would have been seen, he believes, as 'Just another judge who failed to see that the system did its job.'" (emphasis added)

Statements in newspaper articles are hearsay. But if the above writing is an accurate statement of what the trial judge said, it might have considerable significance in the appeal.

I, therefore, believe that there should be a limited remand at this time for the sole purpose of establishing just what was said or done or not said or not done by the trial judge. For example, an inquiry as to the newspaper statements might be:

(1) Did the judge make the alleged statement?

(2) If so, is the statement correctly reported?

(3) If so, what was the context surrounding the statement? and

(4) What did the judge mean by the statement?

I agree that the procedure adopted by the majority is a reasonable response to the motion but, in my opinion, the issues raised by the defendant in his motion should be resolved before the Court reviews the trial judge's discretionary evidentiary rulings, not after.

## ORDER

NOW, THEREFORE, this 17th day of March, 2000, based on the Opinion set forth above, IT IS ORDERED by a majority of the Court, as follows:

(1) The Court declines to grant an immediate limited remand and defers its final decision on the motion pending full briefing on the question of whether any aspect of the factual inquiry requested by the motion will ultimately be warranted.

(2) Briefing relating to the subject matter of the motion must be integrated into full briefing on the merits of the appeal and proceed in accordance with the following schedule:

(a) No later than **30 days following the date of this Order,** Appellant shall serve and file an opening supplemental brief (not to exceed **25 pages**) and appendix, confined to the issues raised in the motion, consistent with this Opinion;

(b) No later than **75 days following** service of appellant's supplemental brief and appendix, the State shall serve and file its answering brief (not to exceed **165 pages**) and appendix on all issues, including those raised in appellant's supplemental brief;

(c) No later than **45 days following** service of the State's answering brief and appendix, Appellant shall serve and file a reply brief (not to exceed **80 pages**) and reply appendix on all issues;

(3) This briefing schedule may not be substantially extended, even with mutual consent of the parties, except by order of the Court upon a clear and convincing showing of good cause.

(4) Oral argument shall be scheduled by further order of the Court.