IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VICTOR RODRIGUEZ | § | |
| | § | No. 199, 2014 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware, in and |
| STATE OF DELAWARE, | § | for Sussex County |
| | § | |
| Plaintiff Below, | § | Cr. I.D. No. 0904025840 |
| Appellee. | § | |

Submitted: November 12, 2014
Decided: January 29, 2015

Before **STRINE**, Chief Justice, **HOLLAND**, and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **AFFIRMED**.


Edward C. Gill, Esquire, Georgetown, Delaware, Attorney for Appellant.

Kathyrn J. Garrison, Esquire, Department of Justice, Dover, Delaware, Attorney for Appellee.

**VAUGHN**, Justice, for the Majority:

The appellant, Victor Rodriguez, filed this appeal from the Superior Court's denial of his motion for postconviction relief pursuant to Superior Court Rule 61. We agree with the Superior Court's denial and affirm.

## I. *Facts and Procedural History*

On July 22, 2010, a Superior Court jury found Rodriguez guilty of Reckless Burning, Burglary in the Third Degree, two counts of Criminal Trespass in the Third Degree, and three counts of Arson in the Second Degree. After finding that he was an habitual offender, the Superior Court sentenced Rodriguez to life in prison for each of his arson convictions. This Court affirmed Rodriguez's convictions on direct appeal.[1]

On November 2, 2012, Rodriguez, filed a *pro se* motion for postconviction relief alleging ineffective assistance of counsel. On April 11, 2013, he filed a *pro se* motion for an evidentiary hearing. Thereafter, counsel was appointed to represent Rodriguez. Rodriguez amended his filings, adding a request for funding to retain an arson investigation expert. The Superior Court denied Rodriguez's motion for postconviction relief and refused his requests for funding to hire an expert and for an

---

[1]  *See Rodriguez v. State*, 30 A.3d 764 (Del. 2011).

evidentiary hearing.[2]

The charges against Rodriguez arose out of five fires. Three of them occurred on April 13, 2009 and were reported to authorities between 4:10 a.m. and 5:30 a.m. (the Hampton Inn, Reynolds Pond, and Milton Meadows fires, collectively the Milton fires). The fourth and fifth occurred on April 24, 2009. One, the Heritage Creek Fire, was reported to authorities at 3:50 a.m. While investigating that fire, investigators found the second fire nearby (the Arch Street fire). Fire investigators determined that all five had been deliberately set.

At the scene of the Milton Meadows fire, Deputy Fire Marshal Harry Miller discovered and photographed two sets of fresh, undisturbed bicycle tracks that led from the road to the area where the fire had originated. While investigating the Heritage Creek and Arch Street fires, investigators found bicycle tire tracks and shoe-prints in an alley between the Heritage Boulevard house and the Arch Street house. Investigators took two castings of the tracks, and Assistant Chief Fire Marshal Richard Ward took pictures of the track impressions on his cell phone. Tire tracks and shoe-prints were also found at the rear of the Arch Street house and by a nearby dumpster.

---

[2] *State v. Rodriguez*, 2014 WL 1724778 (Del. Super. Apr. 14, 2014).

3

Investigators determined that the April 13 Milton fires followed a single line of travel stretching sixteen miles from the Hampton Inn to Milton Meadows. After the fires, investigators canvassed the area for a bicycle with tires that matched the tire tracks found at the Milton Meadows scene. On April 15, Miller found a green mountain bike belonging to Rodriguez outside of Allen Family Foods, a facility located 1.9 miles from Milton Meadows. The width and tread of the bike tires appeared similar to those indicated by the tracks at the Milton Meadows fire.

Rodriguez worked at Allen Family Foods. On April 13, 2009, he clocked in late to work at 4:59 a.m. Rodriguez's roommate testified that Rodriguez used his bike to get around and to work. Investigators calculated the distance between the April 13, 2009 fires, and determined that someone traveling on a bicycle at fifteen miles per hour could have set the three fires and arrived at Allen Family Foods by 5:00 a.m.

Between April 13 and 24, Rodriguez moved from Smyrna to Milton. On April 23, 2009, Rodriguez was seen riding his bicycle on Route 5, approximately one-half of a mile north of where the Heritage Creek and Arch Street fires would occur one day later. Rodriguez's most direct route from his new residence in Milton to Allen Family Foods would have taken him on Route 5 past the Heritage Creek

4

Development. On April 24, 2009, Rodriguez rode his bike to work. He arrived between 4:05 a.m. and 4:10 a.m., and had bags with him. Ward estimated that the Heritage Boulevard fire had been set that morning between 3:00 and 3:15 a.m. and that the Arch Street fire had been burning since approximately 3:15 a.m.

Based on comparisons of Rodriguez's bike tires to the tire impressions found at the Milton Meadows fire and the Heritage Creek fire, his past history of arson and knowledge of Rodriguez's route of travel between his residence and Allen Family Foods, Ward decided to charge Rodriguez with setting the fires. Officials awaited Rodriguez at his residence in Milton to arrest him. Rodriguez arrived in a white pickup truck driven by his coworker and roommate. Rodriguez's mountain bike, which had been observed at Allen's earlier that day, was in the back of the truck. Rodriguez was also wearing the same rubber boots he wore for work. After his arrest, the boots and the mountain bike were seized as evidence for later analysis.

During a search of Rodriguez's rented room with his consent, officials found four to seven bags of newspapers in the room and a laptop computer. No shoes were found. The newspapers appeared to have been discarded by stores and did not appear to have been read. Later investigation of the laptop revealed that, prior to April 23, 2009, a user of Rodriguez's laptop had viewed an April 14, 2009 Milton Beacon

article describing the Milton fires.

Rodriguez was charged with multiple counts, including arson, related to all five fires. Trial in Rodriguez's case began on July 12, 2010. At the conclusion of the State's case, Rodriguez moved for and the trial court granted a judgment of acquittal on all charges related to the Hampton Inn and Reynold's Pond fires because there was no physical evidence connecting Rodriguez to these fires. As mentioned, on July 22, 2010, the jury found Rodriguez guilty of Reckless Burning, Burglary in the Third Degree, two counts of Criminal Trespass in the Third Degree, and three counts of Arson in the Second Degree in connection with the other three fires.

In his postconviction motion, Rodriguez alleges that his trial counsel was ineffective by (i) failing to object to Fire Marshal Ward's testimony; (ii) deferring his opening statement until the close of the State's case; (iii) failing to move for a mistrial after Rodriguez was acquitted of charges arising from the Hampton Inn and Reynold's Pond fires; (iv) failing to object to the State's experts' conclusions that all the fires were the result of arson; and (v) failing to file a pre-trial motion to suppress the search and seizure of his bicycle and boots. Rodriguez raises the same allegations on appeal and, in addition, alleges that the Superior Court erred in the postconviction proceeding by (vi) denying his request for funds to retain a defense expert; (vii)

denying his request to hold an evidentiary hearing on his claims of ineffective assistance of counsel and (viii) denying his request to hold an evidentiary hearing concerning the circumstances of the search and seizure of his bicycle and boots.

## *II. Discussion*

We review a trial court's denial of postconviction relief for abuse of discretion.[3] To prevail on an ineffective assistance of counsel claim, Rodriguez must satisfy the two-prong *Strickland* standard, which requires that he prove that trial counsel's performance was objectively unreasonable and that the defendant was prejudiced as a result.[4]  Under the first prong, judicial scrutiny is "highly deferential."[5]  Courts must ignore the "distorting effects of hindsight" and proceed with a "strong presumption" that counsel's conduct was reasonable.[6]  Under the second prong, Rodriguez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[7]  "A reasonable probability is a probability sufficient to undermine confidence in the

---

[3] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).

[4] *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

[5] *Id.* at 689.

[6] *Id.*

[7] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 687).

outcome."[8] Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[9]

Rodriguez first contends that trial counsel was ineffective by failing to object to testimony from Ward. The testimony complained of is as follows:

> Three major fires. I had a great deal of interest in it. There was no way that I could, from experience or from just common sense, that I couldn't relate that the three fires were connected in one way or the other. I mean, you have a better chance of getting hit by lighting then having something like that happen.

The Superior Court presumed that counsel's failure to object was ineffective, but determined that a curative instruction which it gave concerning the testimony cured any potential prejudicial effect. Rodriguez argues that the curative instruction only increased the prejudicial effect of counsel's initial failure to object. However, it is presumed that the jury follows the instruction of the trial court.[10] Further, on two of the three fires referred to by Ward, Rodriguez was acquitted by the trial court. The Superior Court did not abuse its discretion in finding that Rodriguez failed to

---

[8] *Strickland*, 466 U.S. at 687.

[9] *Id.* at 692.

[10] *See Claudio v. State*, 585 A.2d 1278, 1280 (Del. 1991).

8

establish prejudice with respect to this claim.[11]

Rodriguez's second contention is that trial counsel was ineffective for deferring his opening statement until the close of the State's case. There is no constitutional requirement that defense counsel give an opening statement prior to the start of the State's case. Instead, the timing and content of an opening statement are matters of litigation strategy. The record reflects that trial counsel made a tactical decision to wait until the State finished its case before giving his opening in this case.[12] The Superior Court did not abuse its discretion in finding that trial counsel's decision was within the range of reasonable professional assistance.[13]

Third, Rodriguez claims his trial counsel was ineffective for failing to move

---

[11] *See Manlove v. State*, 527 A.2d 281, 1987 WL 37711, *1 (Del. June 3, 1987) (TABLE) (holding "[t]his Court need not consider these criteria in any particular order or even address both if the defendant makes an insufficient showing on one"); *Swan v. State*, 28 A.3d 362, 391 (Del. 2011) (quoting *Strickland*, 466 U.S. at 697). This Court is free to assume ineffective representation, or bypass it altogether, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . ." *Id.*

[12] *Holmes v. State*, 422 A.2d 338, 339 (Del. 1980) (holding counsel's decision to open after the State's case-in-chief did not amount to a constitutional violation). Moreover, Superior Court Criminal Rule 57(d) provides that where the criminal rules are silent on a point, the Superior Court will regulate its practice in accordance with the applicable Superior Court civil rule. Superior Court Civil Rule 42.1 expressly permits a defense attorney to make an opening statement immediately following the State's opening statement, or at the close of the State's evidence, as counsel chooses.

[13] *See State v. Manlove*, 1986 WL 14001, *2 (Del. Super. Nov. 17, 1986), *aff'd* 527 A.2d 281, 1987 WL 37711 (Del. June 3, 1987) (TABLE) (nature of an opening statement is mostly a litigation strategy).

for a mistrial after the trial court granted a motion for judgment of acquittal on two of the five fires at the conclusion of the State's case. As a result, he argues, the jury was exposed to evidence of other alleged bad acts without the proper analysis pursuant to Delaware Rule of Evidence 404(b). However, when the evidence of the two fires was admitted during the State's case, it was admitted for a proper purpose as evidence of charged crimes. The trial court instructed the jury that it must not consider the evidence pertaining to the charges upon which judgment for acquittal was granted and it is presumed that the jury followed that instruction. The Superior Court did not abuse its discretion in finding that Rodriguez failed to prove prejudice with regard to this claim.

Rodriguez's fourth claim is that trial counsel was ineffective for failing to object to the State's experts' conclusions that all of the fires were the result of arson. The record reflects that trial counsel made the tactical decision to forego challenging whether the fires were deliberately set or accidental because the issue was immaterial to Rodriguez's defense at trial that he did not set the fires. We find no abuse of discretion in the Superior Court's conclusion that the charge of ineffectiveness did not satisfy the *Strickland* standard.

Rodriguez's fifth claim is that trial counsel was ineffective for failing to seek

10

suppression of the bicycle and boots. The record reflects that the bicycle was photographed while in plain view and that the boot prints were compared to a standard pair of boots issued by Rodriguez's employer, not his boots specifically. Neither the bicycle nor boots were seized prior to his arrest. The trial court concluded that a motion to suppress had no merit, and we find no abuse of discretion.

Rodriguez's sixth claim is that the Superior Court committed error by not authorizing funds for a defense expert in the postconviction proceeding. He makes conclusory statements that arson investigations are not based on sound science without attempting to explain how the experts' opinions in this case could have been challenged. The expenditure of funds for the defense is discretionary, and we find no abuse of discretion in the trial court's conclusion that Rodriguez's challenge to the validity of arson investigations was unpersuasive or its decision to deny funds for a defense expert.

Rodriguez's seventh claim is that the Superior Court erred by denying his request for an evidentiary hearing on his claim that counsel was ineffective by failing to object to the State's experts' testimony. For the reasons given regarding Rodriguez's fourth and sixth claims, we find no abuse of discretion in the trial court's decision not to hold an evidentiary hearing.

Finally, Rodriguez argues that the Superior Court erred by refusing to hold an evidentiary hearing to determine whether the search and seizure of his bicycle and boots was constitutional. For the reasons given regarding Rodriguez's fifth claim, we find no abuse of discretion in the Superior Court's denial of Rodriguez's request for an evidentiary hearing on this issue.

Rodriguez has not met the two-prong *Strickland* standard to establish ineffective assistance of counsel. Moreover, he has not shown that the Superior Court abused its discretion in denying funds to retain a defense expert or denying his request for an evidentiary hearing.

### III. Conclusion

Accordingly, we affirm the Superior Court's denial of Rodriguez's motion for postconviction relief on the basis of and for the reasons assigned by the Superior Court in its Opinion dated April 14, 2014.

**STRINE,** Chief Justice, concurring:

I concur in my colleagues' ultimate resolution of this matter and in their finding that Rodriguez did not establish prejudice under *Strickland*. Accordingly, I agree that the judgment of the Superior Court should be affirmed. But I write separately to emphasize two points.

First, in responding to Rodriguez's claims that his trial counsel was ineffective for failing to object to Fire Marshal Ward's testimony and that the Superior Court's limiting instruction did not cure any prejudice, my colleagues invoke the presumption that jurors can and will disregard information they have heard because the judge tells them to. I confess reticence to relying upon a judicially-invented presumption as a short-hand to address the admission of improper testimony that could lead a jury to convict a defendant for improper reasons.[14] In confessing that reticence, I in no way divide with the Majority Opinion on affirming the judgment of the Superior Court. But I see no reason to jump to reliance on the presumption here, when I fail to see in the first place how Ward's statement was prejudicial to Rodriguez, who never disputed that the fires were deliberately set—only that he was not the one who set

---

[14] See *Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("The rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process.").

11

them. Ward was responding to a question about the cause of one of the fires for which Rodriguez was eventually acquitted, so the perception that all of the fires were the work of a single arsonist may even have assisted Rodriguez.

Furthermore, I agree with the Majority Opinion that based on the circumstances of this case, Rodriguez's argument that the court's curative instruction was ineffective and that the presumption is inconsistent with social science research is without merit. But that is precisely because an analysis of the arguably prejudicial evidence indicates that it is of the sort that a jury could put out of its mind after being so instructed.[15] In situations when the improper evidence or argument is of a kind that bears more on the defendant's guilt, it would be difficult for anyone to "unhear and unthink." To ask a

---

[15] See, e.g., David Alan Sklansky, *Evidentiary Instructions and the Jury As Other*, 65 STANFORD L. REV. 407 (2013) (finding that, contrary to the popular myth that they are *per se* ineffective, "[e]videntiary instructions probably do work, although imperfectly and better under some circumstances than others"); Cassandra L. Wilson & Eric Laws, *The Effect of Judges' Instructions About Case Information on Jury Memory*, 4 LONGWOOD UNIV. J. UNDERGRADUATE SCHOLARSHIP (2011), *available at* http://blogs.longwood.edu/incite/2011/08/29/the-effect-of-judges%E2%80%99-instructions-about-case-information-on-jury-memory/ (citing S.M. Kassin & C.A. Studebaker, *Instructions to Disregard and the Jury: Curative and Paradoxical Effects*, INTENTIONAL FORGETTING: INTERDISCIPLINARY APPROACHES, Golding, J. M., & MacLeod, C. M., eds. (1998)) ("if the presented information is considered to be irrelevant or only slightly influences the case at hand, then it is much more likely that the juror will be able to disregard the statement."). *See also* Kerri L. Pickel, et al., *Jurors' Responses to Unusual Inadmissible Evidence*, 36 CRIM. JUSTICE & BEHAVIOR 466 (2009), *available at* http://kpickel.iweb.bsu.edu/PickelKaram&Warner(2009).pdf (finding that jurors are able to disregard or forget inadmissible evidence when the content of the evidence is neutral or not "especially memorable").

jury to do so, as Learned Hand noted in 1932, is "a mental gymnastic which is beyond, not only their powers, but anybody's else."[16] We should be reticent to invoke a judge-made presumption without considering whether it is a reliable basis for upholding a conviction under the specific circumstances of the case at hand.

Likewise, I cannot join my colleagues' determination that Rodriguez's trial counsel made a reasoned, tactical decision to defer his opening argument until after the State had presented its case and that this decision was not ineffective under the first prong of *Strickland*. Counsel's sole explanation in his Rule 61(g)4[17] affidavit for deferring his opening statement until the end of the State's case-in-chief was that he "believed that the State's ability to connect the defendant with various incidences of arson was tenuous and therefore reserved opening statements until the full presentation of the State's case." No doubt the Superior Court Rules permit attorneys to choose to defer making an opening statement.[18] Thus, there is no invariable requirement that a defendant must give an opening statement at the beginning of trial,

---

[16] *Nash v. U.S.*, 54 F.2d 1006, 1007 (1932).

[17] Super. Ct. Crim. R. 61(g).

[18] *See* Super. Ct. Civ. R. 42.1.

13

as this Court has recognized on multiple occasions.[19] But the decision not to do so should be made carefully because it leaves the jury with only the State's version of events until deep into the trial process.

Not only that, a reading of the opening argument that Rodriguez's counsel eventually made does not suggest that it was the careful product of counsel's searching consideration of the State's case-in-chief, and a distillation of its key weaknesses into an explanation for the jury of how the defense's case would highlight the many reasons the State could not meet its high burden of proof. Instead, the opening that counsel had supposedly delayed for strategic advantage was perfunctory, occupying a full four transcript pages. Given other efforts of counsel during the case, which resulted in Rodriguez being acquitted of charges related to two of the fires, and the overall record, I agree with my colleagues that Rodriguez has not shown that had his counsel made an opening argument at the beginning of trial, there is a reasonable probability of a different outcome. Rodriguez has thus not satisfied his burden to demonstrate prejudice under the second prong of *Strickland*. But I cannot embrace

---

[19] *See*, e.g., *Shockley v. State*, 565 A.2d 1373, 1380 (Del. 1989) (holding that counsel's "unorthodox" choice to waive both opening and closing statements was not constitutionally defective under *Strickland*); *State v. Manlove*, 1986 WL 14001, *2 (Del. Super. Nov. 17, 1986), *aff'd*, 527 A.2d 281 (Del. 1987) ("The nature of the opening statement of counsel is largely a matter of litigation strategy. It cannot be said that counsel's following a particular strategy of speaking of certain matters and not of others constitutes ineffective assistance of counsel.").

14

the notion that counsel's unexplained deferral of the right to speak to the jury on his client's behalf and later generic opening can be deemed the product of a reasonable strategic decision-making process.